**CINCINNATI (City) Appellant, v. HYAMS, Appellee.**

Ohio Appeals, First District, Hamilton County.

Nos. 6550-6551.   Decided November 13, 1945.

John D. Ellis, Cincinnati, Robert J. Paul, Cincinnati, for appellant.

Arthur C. Fricke, Cincinnati, and Louis Rubenstein, Cincinnati, for appellee.

## OPINION

By MATTHEWS, J.

The appellee was convicted as the result of a trial without a jury in the Municipal Court of Cincinnati in two proceedings of knowingly having in his possession memoranda of wagers, commonly known as race horse slips and pay-off slips, and contrary to municipal ordinances. He was fined $200.00 and costs in each case, but one-half of the fine was remitted.

Appeal was taken to the Common Pleas Court, where the appeals were consolidated for the purpose of hearing. That court reversed the judgments and ordered the release of the accused, on the ground that the judgments were manifestly against the weight of the evidence.

The City of Cincinnati has appealed to this Court from those judgments of reversal.

As the accused offered no evidence, the appeals raise the sole question of whether the Common Pleas Court was correct in concluding that the judgments of the Municipal Court based on that evidence were manifestly against the weight of the evidence.

Before considering the evidence, let us determine the rule by which an appellate court should be governed in testing the sufficiency of the evidentiary basis of a judgment rendered by a trial court in a criminal case.

In **Breese v State, 12 Oh St. 146,** the Court stated the rule in the fourth paragraph of the syllabus that:

"A judgment will not be reversed because the judgment

is contrary to the evidence, unless it is manifestly so, and the reviewing court will always hesitate to do so where the doubts of its propriety arise out of a conflict in oral testimony."

Speaking of Breese v State, the Supreme Court in **Cooper v State, 121 Oh St., 562,** at 570, said:

"Breese v State, supra, was a case where the evidence of the state was circumstantial, and there was not only· a sharp conflict between the evidence of the state and that of the defense, as to the circumstances, but also a discredited and unconvincing explanation made by the accused of his possession after the burglary, of a portion of the goods stolen, so that, to arrive at a verdict at all, it was necessary for the jury to determine wherein the truth lay between conflicting testimony—to believe the testimony of certain witnesses and wholly disbelieve the testimony of certain other witnesses—and by that process to reach a conclusion beyond a reasonable doubt that the accused was guilty, and so render its verdict. This court very properly held that the jury and the trial court were in a better position to determine what testimony was true and what testimony was not true; and in that respect it would not substitute its judgment for the judgment of the jury and the trial court."

See, also: 2 **O Jur.,** 767, et seq.

The general rule is stated thus in 3 Am. Jur., at 398: "Appellate courts are loath to disturb the finding of the jury on criminal prosecutions and not inclined to pass on questions not properly brought before them. Thus in prosecutions for embezzlement where there was persuasive evidence to go to the jury of the fact, as found, that an agent appointed to liquidate the affairs of an insolvent bank declared and paid a dividend on stock belonging to himself, the appellate court refused to review the finding even though the agent claimed that the stock belonged to a third person."

It is manifest that a reviewing court must accept the probative value placed upon evidence by the trial court based on the credibility of witnesses and the permissible inferences from proven facts.

In testing the sufficiency of this evidence, the unexplained failure of the defendant to testify is a fact to be considered. Both by the constitutional **(Art I, Sec. 10)** and

statutory (§13444-3 GC) provision, that failure may be considered by the court and jury and made the subject of comment by counsel. Of course, the permission to consider the defendant's failure to testify necessarily means that if no other reason appeared, his unexplained failure to testify when he had full opportunity to do so, would justify the trier of the facts in drawing the inference that he had no explanation to make of the incriminating evidence introduced against him. **Halsey v State, 42 Ohio Ap, 291, at 295.**

Now let us consider the evidence. It should be noted at the outset that there are many exhibits which are not attached to the bill of exceptions in any way, and although the bill shows that exhibits were admitted in evidence, there is no recital anywhere in the bill that they had been attached to or made a part of it. In that situation we doubt very much whether we have a right to consider this bill as containing all of the evidence. However, as our conclusion would be the same, we have concluded to give the appellee the benefit of considering the exhibits as properly before us and the bill as containing all the evidence.

On the night of September 23rd, 1944, at 9:45 o'clock, the appellee appeared at the Cincinnati City Hall in an agitated state, and when asked what was wrong, said that some one had taken a shopping bag containing $200.00 and some "other property"—checks, bank books, keys—from his automobile which he had parked at 9th and Linn Streets while he went into a cafe for a few minutes. The officers to whom this had been said went with him to 9th and Linn Streets in an effort to discover the thief. While there, the appellee told them that: "He did not want to mix in court and to drop it right there." And apparently the search for the thief ended at that time.

While the appellee did not care to have the police continue their search, he manifestly was anxious to have his shopping bag and its contents returned to him. This is shown by the fact that he caused to be inserted in the next afternoon issue of a newspaper an offer of a reward of $200.00 for the return of the "shopping bag with personal papers." In this advertisement he gave his residence telephone number, but did not otherwise disclose his identity.

On the following morning about 9:30 o'clock, that is, about twelve hours after the appellee notified the police of the theft, two boys found an empty shopping bag or bags under the Western Hills Viaduct. The record does not show how far

that was from the scene of the theft, and the omission does not seem material. Whether it was one or two bags that was found is not certain. Sometimes the reference in the testimony is in the singular and sometimes in the plural. As the exhibit came to this court it was one container composed of two bags, one forming a sort of lining for the other. The container was empty. Scattered on the ground within from two to four feet of this container were card board tickets, long paper slips, a bank book, memorandum books, advertising defendant's place of business, keys, and more than forty checks signed by various persons and endorsed in blank by the payees. There was no money. On the card board tickets, was printed the following: "Win—Place—Show" with blank space above, in which was written in pencil a figure. Each card had a number in large print in both words and figures and in small type: "Not responsible for mistakes. Watch ticket writer." In the right lower corner in large red type was the following: "Valley Cigar Store. 6117 Vine St." The pay-off slips were so printed as to facilitate keeping a record of the results of races.

These slips were later identified by the witnesses for the appellant as cards and slips used in betting or race horse slips, and Valley Cigar Store as the trade name under which appellee did business. The "race horse slips" and "pay-off slips" by their form and wording indicate their character and this was emphasized by comparison with the "Form Sheet" published by American Racing Record introduced in evidence which shows the winning horse and the odds.

The boys collected all these objects, placed them in the shopping bag and in due time delivered them to a substation of the Cincinnati Police Department. The officer in charge had seen the newspaper advertisement and by telephoning to the number given learned that it was the appellee who had advertised the offer of the reward. In that way, the boys were placed in communication with the appellee and collected the reward about a week after the theft. The property was sent to the Police Headquarters at City Hall to await disposition.

On September 30th, the appellee appeared at Police Headquarters and claimed as his the forty checks totaling $2005.36, forty-two keys, a beer opener on two key rings, and a bank book. The record does not show that he expressly disclaimed ownership of the shopping bag, the memorandum books and the race horse and pay-off slips. It does show that although

hc advertised that the shopping bag contained "personal papers" he made no claim to them or to a letter addressed to him about opening a "book" at a named location. He then claimed everything of any value, although none of it except the bank book had any mark identifying it as his property, and failed to claim the other articles, notwithstanding they either had his name or place of business, or both, on them.

The trial court on this evidence found the defendant guilty of knowingly possessing these race horse slips and pay-off slips at 9th and Linn Streets in the City of Cincinnati—the place where he said the shopping bag and contents had been taken from his automobile. It is claimed by the appellee that the evidence is insufficient to support that conviction. The claim is that there is no evidence that these race horse slips and pay-off slips were at any time at the corner of 9th and Linn Streets. It is said that the only proof is that they were under the Western Hills Viaduct and that the appellee was admittedly not there, and, therefore, could not have had possession of them at that place, nor at 9th and Linn Streets.

Of course, it is contrary to all reason to suppose that these articles originated or sprang into being under the Western Hills Viaduct. In the nature of things, they had to be brought there from some other place. From where, and how? It there evidence from which a rational answer can be made? It is clear that there is no direct testimony on the subject. However, the trial court found an answer in the circumstantial evidence in the record. The question before us is whether this court can say that that circumstantial evidence falls so far short of the standard of probative value required in a criminal case as would require this court to say the trial court's finding is manifestly wrong. The standard is proof beyond a reasonable doubt, and reasonable doubt is defined by §13442-3 GC, to be "Not a mere possible doubt, because everything relating to human affairs, or depending upon moral evidence, is open to some possible or imaginary doubt. It is that state of the case which after the entire comparison and consideration of all the evidence, leaves the mind of the jurors in that condition that they cannot say they feel an abiding conviction to a moral certainty of the truth of the charge."

The trial court after analyzing and considering the evidence found the defendant guilty, thereby declaring that the evidence had caused him to have an abiding conviction

to a moral certainty of the appellee's guilt. Our task as an appellate court is to decide whether the trial court erred in so declaring and in reaching our conclusion we are required to give every reasonable construction to the evidence and only reverse if we should find that the judgment is manifestly against the weight of the evidence. We must, therefore, also analyze and consider the evidence.

There can be no doubt that the defendant was at 9th and Linn Streets. It is equally clear that he had a shopping bag there containing forty checks, a bank book, forty-two keys and a beer opener on two key rings. It is equally clear, because appellee claimed them, that these same forty checks, forty-two keys and a beer opener on two key rings and a bank book were under the Western Hills Viaduct twelve hours thereafter, lying within two feet of a shopping bag.

The appellee admitted that these articles were taken from his possession at 9th and Linn Streets by a thief and were found under the Western Hills Viaduct. He admits that the shopping bag contained other "personal papers" at 9th and Linn Streets, but does not admit that the race horse slips and pay-off slips were in that bag or that he referred to them in his advertisement as "personal papers." But the proof is clear that the race horse slips and pay-off slips upon which his name and place of business were printed were found under the Western Hills Viaduct at the same time and in the same place that the other articles that he admits had been taken from him at 9th and Linn Streets. The trial court concluded that the race horse slips and the pay-off slips came from the same place at the same time in the same way.

It is urged that in a criminal case the evidence must remove every reasonable hypothesis save that of the guilt of the accused. Well, what hypothesis is offered as to presence of these race horse slips and pay-off slips bearing the printed name and place of business under the Western Hills Viaduct along with the other articles which defendant admits belonged to him and were in his possession at 9th and Linn Streets? It is said that some one in passing over Western Hills Viaduct may have thrown them over and that they landed there. These race horse slips and pay-off slips are light. There were many of them—how many is not clear. Some may have been joined together, but placing the most favorable construction on the record, it is still clear the hypothesis presents the spectacle of several pieces of paper being thrown from a bridge, floating through the air and all coming to rest within

three feet of one another, and within the same distance of these articles which appellee admits were stolen from him at 9th and Linn Streets. It might happen—but is it probable?

As against this hypothesis, we have evidence of a shopping bag having been stolen containing $200.00 and these articles which appellee admits belonged to him and that it contained "other personal papers," and we find all these things under the Western Hills Viaduct, the shopping bag empty and all the articles within three feet of it excepting the money which is missing. What thought does it naturally produce? Is it not that the thief emptied the bag, took the money and left the other articles? And is not that hypothesis infinitely stronger than that these race horse slips had been thrown from the viaduct? It seems to us that the one is natural and reasonable, and the other fantastic and unreasonable. The evidence does not present two or more equally plausible or logical hypotheses.

Let us test the reasonableness of this conclusion that the thief brought these race horse slips from 9th and Linn Streets in another way. Suppose the thief were on trial for stealing the race horse slips and it had been proven that he had been at 9th and Linn Streets and that the race horse slips had been there commingled with the checks, the bank book and the keys and beer opener, and that the thief had admitted that he had deposited these articles, other than the race horse slips, under the Western Hills Viaduct, but notwithstanding the race horse slips were found under the Western Hills Viaduct within three feet of the other articles, denied that he had taken them there. Would anyone have believed him?

We think the circumstantial evidence satisfactorily proves that these race horse slips and pay-off slips were in the possession of the appellee at 9th and Linn Streets, and that he had knowledge of their character.

The defendant had full opportunity to take the stand to refute his ownership and possession of these articles, which had printed on them his name and place of business, but chose to remain silent. That fact the trial court had a right to consider in weighing this evidence.

We cannot conclude that the trial court was manifestly wrong in deciding that the defendant's guilt had been proven beyond a reasonable doubt.

For these reasons, the judgment of the Common Pleas

Court is reversed, and that of the Municipal Court is affirmed.

HILDEBRANT, P. J., MATTHEWS & ROSS, JJ., concur in syllabus, opinion & judgment.