CITY OF AKRON, APPELLEE, *v.* STOUFFIS, A. K. A. STOUFFER, APPELLANT.

(No. 4392—Decided December 9, 1953.)

*Mr. Roy E. Browne,* director of law, and *Mr. Harold F. White,* for appellee.

*Mr. Alexander S. Greenbaum,* for appellant.

DOYLE, P. J.  Mike Stouffer was convicted in the Municipal Court of Akron, Ohio, upon the charge of unlawfully possessing "lottery tickets designed for the purpose of facilitating gambling, to wit, in carrying on a clearing house lottery scheme of chance in violation of Section 77, Revised Ordinances, as amended by city ordinance No. 171-1951."

The charge was based upon a city ordinance (now appearing as Section 25 of Chapter 25 of the 1952 Code of the City of Akron) which in part provided:

"Any person who shall be or become the possessor, custodian or depositary * * * of any apparatus, device, sheets, slips, tickets, or books of any kind by whatever name, style, or title denominated or known, designed or used for the purpose of facilitating, enabling or assisting in gambling * * *, shall be deemed guilty of a misdemeanor and fined * * *."

In the appeal to this court from the judgment of conviction, numerous errors are claimed, which are asserted to be prejudicial and require a reversal of the judgment. We will pass on all of them and briefly discuss a few.

1. Constitutionality of the ordinance.

This court, in *Mooney* v. *City of Akron,* unofficially reported in 14 Ohio Law Abs., 321, speaking through Washburn, P. J., said: "When required in the regular course of judicial procedure, it is our duty to declare laws void if not within the legislative power, but we should never do so except in a clear case, and we are bound to indulge every reasonable presumption in favor of the validity of a legislative enactment. One branch of the government cannot encroach on the domain of another without danger, and the safety of our institutions depends in no small degree upon our observance of this salutary rule."

In the case then under consideration, an ordinance in almost the identical language as the one now before us was under attack. Our analysis then of that ordinance is equally applicable to the present one. The ordinance legislates against the possession of certain articles designed or used for the purpose of facilitating, enabling or assisting in gambling. If a person has possession of such articles and uses them to assist in gambling, he has committed an offense. Likewise, if he has possession of such articles for the purpose of assisting in gambling, he has committed an offense. However, the mere possession of such articles without

use and without any purpose of assisting in gambling, is not an offense. The word "designed" as used in the ordinance may be interpreted as meaning "intended." It is one of the well-recognized meanings of the word. So, when the ordinance is interpreted to legislate against the possession of certain articles which the possessor either used, or intends to use, to assist in gambling, its constitutionality cannot be successfully attacked.

2. Unlawful search and seizure.

The evidence indicates that two police officers went to the accused's place of business (a restaurant) on information that he was engaged in the "numbers" business. In the process of securing evidence, the officers asked him to loosen and lower his trousers. When complying with the request, two slips of paper, later identified as "numbers lottery" tickets, fell to the floor from his person or clothing. It is asserted that this constituted an unlawful search and seizure, and, as a consequence thereof, the admission of the tickets in evidence was unlawful and prejudicial.

In our consideration of this question, we need not be concerned with the many contradictory opinions of the federal courts. See "Unlawful Searches and Seizures" and cases cited in 47 Ohio Opinions, 405. The Supreme Court of Ohio has established the following rules, which we are obligated to follow. They are:

"3. An officer of the law who makes search and seizure in a dwelling or other premises, without a warrant or with an illegal warrant, in contravention of Section 14, Article I, of the Constitution of Ohio, is a trespasser, and amenable to an action for such trespass.

"4. In a criminal case, evidence obtained by an unlawful search is not thereby rendered inadmissible, and, if otherwise competent and pertinent to the main issue, will be received against an accused.

"5. An application or motion to suppress or exclude such evidence made before trial or during trial is properly denied. The court need not concern itself with the collateral issue of how the evidence was procured. * * *" *State* v. *Lindway,* 131 Ohio St., 166, 2 N. E. (2d), 490. See also: 150 A. L. R., 566, and cases therein cited.

In the case before us, although the officers might be considered trespassers or might be guilty of technical assault, nevertheless the evidence was admissible, because in cases of this kind the policy of this state is that the trial court need not concern itself with the collateral issue of how the evidence was obtained.

3. The weight of the evidence.

Proof of a person's intentions at the time of the commission of an offense is usually of a circumstantial character. And one of the circumstances which may be considered is an accused's failure to take the witness stand in his own defense, the legal significance of which is that the charge remains unchallenged, except only through the plea of not guilty. Section 13444-3, General Code, provided:

"On the trial of criminal causes, a person charged with an offense may, at his own request, be a witness, but not otherwise. The failure of such person to testify may be considered by the court and jury and may. be made the subject of comment by counsel."

See also: Article I, Section 10, Constitution of Ohio.

In the light of this statute, the trial court, in determining the probative value of direct and circumstantial evidence from which inferences may be drawn, has the right to consider the unexplained failure of the accused to take the witness stand. *City of Cincinnati* v. *Hyams,* 77 Ohio App., 403, 67 N. E. (2d), 39.

As stated in *Leslie* v. *State,* unofficially reported in 7 Ohio Law Abs., 299:

"* * * When one is being tried for a crime which

may mean even his life, and in any event his liberty, it seems almost unbelievable that if innocent he could be persuaded to refrain from raising his own voice in a protest of innocence. * * *.''

In *City of Cleveland* v. *McNea,* 158 Ohio St., 138, at p. 142, 107 N. E. (2d), 201, the court stated:

''The trier of the facts was authorized to consider the failure of the defendant to testify or to make any explanation of the many incriminating facts, conditions and circumstances which he must have regarded as pointing definitely to his guilt of the offense charged.''

In the case now before us for decision, we find that the established facts and the inferences to be drawn therefrom, including the inferences to be drawn from the failure of the defendant to take the witness stand, were sufficient for the trier of the facts to find the defendant guilty as charged. The fact of the possession of gambling papers, coupled with their concealment or attempted concealment on the person of the defendant, and further coupled with a refusal to testify why they were upon his person, is sufficient to permit an inference that the material was possessed with the intention of using it in gambling.

The law which safeguards a defendant from testifying *against himself* is not here involved. The defendant in this case refused to testify *in favor* of himself, as was his right, and, from that refusal, the Ohio Constitution and the statute hereinbefore set forth permit a court or jury to draw the inference that his honest testimony would not be favorable to his defense.

4. In consideration of other claimed errors, we find none prejudicial to the rights of the defendant.

The judgment is affirmed.

*Judgment affirmed.*

HUNSICKER and STEVENS, JJ., concur.