

# THE ATTORNEY GENERAL

## OF TEXAS

WAGGONER CARR
ATTORNEY GENERAL

AUSTIN 11, TEXAS

December 6, 1965

This Opinion
Overrules Opinion

#M5-107-ie

Honorable Robert S. Calvert
Comptroller of Public Accounts
Austin, Texas 78711

Opinion No. C-559

Re: Whether a 1965 Model
Twin Cessna Aircraft
310-J may be paid for
out of funds appropri-
ated to the Texas
Parks and Wildlife
Commission under
House Bill No. 12,
Acts 59th Legislature,
1965.

Dear Mr. Calvert:

Your request for an opinion asks the following
question:

> May a 1965 Model Twin Cessna Aircraft
> 310-J be paid for out of funds appropriated
> to the Texas Parks and Wildlife Commission
> under House Bill No. 12, Acts 59th Legislature,
> 1965?

Article V, Section 21a of House Bill No. 12, Acts
of the 59th Legislature, provides as follows:

> "Sec. 21. PASSENGER VEHICLES. a. None
> of the moneys appropriated in this Act may be
> expended for the purchase of a passenger car
> or of airplanes designed for passenger trans-
> portation unless authority to do so is stated
> by the language of this Act. Moreover, none
> of the moneys appropriated in this Act may be
> expended for the maintenance or operation of
> any State-owned passenger car or airplane de-
> signed for passenger transportation unless
> the authority to do so is stated by the language
> of this Act."

Section 20 of Article V of House Bill No. 12 is also
pertinent to the purchase of an airplane. It provides:

-2700-

"Sec. 20. AIRPLANES. None of the moneys appropriated by this Act may be expended for the purchase of an airplane, or for the repair of an airplane costing in excess of Five Thousand Dollars ($5,000), without the prior written approval of the Governor after obtaining the advice of the Legislative Budget Board.

"None of the funds appropriated in this Act may be expended by a state agency for operation or maintenance of a state-owned airplane unless the agency files a report with the Legislative Budget Board showing the names of places to which flights were made, the name of the pilot, and the name or names of any passengers on each such flight, and the official business purposes of each such flight. Such report shall be certified as to accuracy by the executive head of the agency and shall be filed by no later than October 1 for the preceding fiscal year."

In accordance with Section 20 of Article V, the prior written approval for the purchase of a Cessna 310 class aircraft for the Parks and Wildlife Department was secured from Governor John Connally with the express notation:

". . .I am today approving, upon the advice of the Legislative Budget Board, the purchase of a twin-engine plane equal to or in the Cessna 310 class through the State Board of Control from current funds . . ."

". . .that the plane will be used to further the Parks and Wildlife Programs of the Department and the plane will not be used as a passenger plane except on official state business as approved by the Commission or the Executive Director as to its assignment and location."

Although, Section 20, above quoted, is couched in negative language, it necessarily implies that the moneys appropriated by this Act may be expended for the purchase of an airplane, and for the repair of an airplane costing in excess of Five Thousand Dollars ($5,000) with the prior written approval of the Governor after obtaining the advice of the Legislative Budget Board.

The question arises, whether Section 21 of Article V is applicable. In order to determine this, the phrase "airplanes designed for passenger transporation" must be analyzed. In a prior opinion of this office, the above phrase was construed as meaning, ". . .reasonably adapted, structurally, for carrying passengers. . . .", Letter Opinion No. MS-107 (1953). This office specifically overrules this prior construction.

"Designed" is defined by Webster's New World Dictionary of the American Language as follows:

"designed, adj. /pp. of design/, formed or done according to design; planned; purposed; intended."

"Designed" is defined in the fourth edition of Black's Law Dictionary as follows:

". . .taken to be employed for a particular purpose. . . .Intended, adapted or designated." (Emphasis supplied)

It is the opinion of this office that the word "designed" as used in Section 21 of Article V, House Bill No. 12, Acts of the 59th Legislature, is synonymous with the words "purposed" and "intended." Therefore, the phrase may be interpreted to read ". . .airplanes 'intended' for passenger transportation. . .".

It is the intent or purpose of the Department purchasing an airplane which determines whether or not Section 21 of Article V is applicable, not the structural design of the airplane. This construction is supported by Williams v. State, 264 S.W.2d 731 (Tex.Crim. 1954) which, while construing the phrase ". . .policy book . . . designed or adaptable for use in connection with a policy game", defined "designed" as follows:

". . .The terms, 'designed' and 'adaptable,' are not defined in the statute. As there used, the term 'designed' means, among other things, 'intended', 26 C.J.S. p. 1238, . . .

"It is apparent, therefore, that by the use of the term 'designed', an intent on the part of the possessor of the policy book and policy slip is written into the offense.

"It is, therefore, immaterial that the book here involved was, upon its face, nothing more or less than a common notebook and the slip merely a blank piece of paper. If the notebook and slip of paper were possessed by appellant with the intent to use them in playing the game of policy, the unlawful act condemned by the statute has been shown."

Other jurisdictions have reached a similiar result. Bruce v. Sibeck, 78 P.2d 741 (Cal. Dist. Ct. of Appeals, 1938, hearing denied by Supreme Ct.); City of Akron v. Stouffis, 121 N.E.2d 307, 96 OA 105, Ohio Ct. of Appeals, 1953; People v. Darrington, 221 Mich. 571, 191 N.W. 831 (1923).

Furthermore, it would be an impractical and uneconomical limitation on the various departments to require them to purchase automobiles and airplanes which have been specially constructed not to transport passengers.

Consequently, it is the opinion of this office that since the aircraft is intended to be used by the Parks and Wildlife Commission in connection with its statutory duties and responsibilities as they relate to the enforcement of the game and fish laws and carrying out the operations of its park services, the aircraft is not designed for passenger transporation within the meaning of Section 21 of Article V, House Bill No. 12, Acts 59th Legislature, 1965.

Paragraph 12, Article III-108, House Bill No. 12, Acts 59th Legislature, 1965, appropriates funds for the enumerated purposes:

"12. Consumable supplies and materials, current and recurring operating expense (excluding travel), maintenance and operation of passenger cars and aircraft, capital outlay including passenger cars." (Emphasis added)

The Parks and Wildlife Commission may purchase an airplane as part of its capital outlay and may then maintain and operate it under the above provision.

## S U M M A R Y

Section 21 of Article V, House Bill No. 12, Acts 59th Legislature, 1965, does not prohibit the purchase of a 1965 Model Twin Cessna Aircraft 310-J where it is the intent of the Parks and Wildlife Commission to use it in the performance of its duties and for official State business and not as a passenger plane. Funds may be expended from paragraph 12, Article III-108, House Bill No. 12, Acts 59th Legislature, 1965, for the purchase, maintenance and operation of the airplane.

Very truly yours,

WAGGONER CARR
Attorney General

By

Wade Anderson
Assistant

WA:ml

APPROVED:
OPINION COMMITTEE

W. V. Geppert, Chairman
W. O. Shultz
Bob Flowers
James Broadhurst

APPROVED FOR THE ATTORNEY GENERAL
By: T. B. Wright