Zimmerman, J.
 

 Defendant was indicted under Section 5903-19, G-eneral Code, the pertinent part of which reads: “Any person who shall have in his possession or control any cartridge, shell, bomb or similar device, charged or filled with one or more explosives, intending to use the same or cause the same to be used for an unlawful purpose, * * * shall be deemed guilty of a
 
 felony
 
 * * *. The possession or control by any person of any such device so charged or filled, shall be deemed prima facie evidence of an intent to use the same, or cause the same to be used, for an unlawful purpose.”
 

 Contending for a reversal of the judgment of the Court of Appeals and an affirmance of that of the Court of Common Pleas, counsel for the state advance several arguments. In deciding this case we find it
 
 *171
 
 necessary to examine but two, which we place in the following order:
 

 1. The entry and search of defendant’s dwelling were made at the invitation of his wife, which effected a waiver of any constitutional protection he might otherwise have claimed;
 

 2. The cartridges and bombs discovered were contraband under the law, and their admission in evidence was not dependent upon their seizure under a valid warrant authorizing such action.
 

 Since the constitutional barrier to unreasonable searches and seizures is in the nature of a personal privilege, it is questionable if it may be waived by anyone except the person whose rights are invaded. A conflict of authority exists as to whether such waiver may be made by the wife of the one who is involved, in his absence, with the weight of authority against it. Underhill’s Criminal Evidence (4 Ed.), Section 800, pages 1456, 1457; Cornelius on Search and Seizure (2 Ed.), Section 24, page 71; 56 Corpus Juris, 1182 and 1183; 24 Ruling Case Law, 723; 58 A. L. R., 740.
 

 But assuming defendant’s wife possessed such authority, unexpectedly faced by the coercive influence of three law officers, such assent as she may have given to the search, particularly in view of the conflicting testimony thereon, lacked the spontaneity and attributes of an invitation, and was therefore insufficient to constitute a waiver.
 
 Amos
 
 v.
 
 United
 
 States, 255 U. S., 313, 41 S. Ct., 266, 65 L. Ed., 654;
 
 Duncan
 
 v.
 
 Commonwealth,
 
 198 Ky., 841, 250 S. W., 101, a case directly in point.
 

 The second contention, outlined above, is predicated upon certain decisions of this court, to be noted later, involving principally the so-called ££Crabbe Act” (Section 6212-13
 
 et seq.,
 
 General Code, 108 Ohio Laws, Part 2, 1182), relating to the unlawful possession of intoxicating liquor, etc., which was repealed prior to
 
 *172
 
 the commission of the alleged crime charged to the defendant.
 

 We find that onr further inquiry cannot be limited to the admissibility in evidence of the cartridges and bombs on the contraband theory alone, but must be extended to a much wider field. We do confine our discussion, however, to search and seizure in a dwelling or other premises.
 

 It is well settled that the Fourth and Fifth Amendments to the United States Constitution, part of the Bill of Bights, prohibiting unreasonable searches and seizures and providing that no person shall be compelled in any criminal case to be a witness against himself, are directed exclusively against the activities of the Federal government and have no application to the various states and their agencies.
 

 However, most state constitutions, including that of Ohio (Article I, Sections 10 and 14), contain identical or similar provisions, and the decisions are in general agreement that searches and seizures are unreasonable and illegal in the absence of a valid warrant. Therefore, a law officer who proceeds to make a search and seizure without a warrant, or under a defective warrant, is a trespasser,: amenable to civil and perhaps criminal action, But whether articles or property so illegally obtained may be used in evidence against an accused raises another question.
 

 On this proposition the authorities are at hopeless odds, and few matters have been argued pro and con with more earnestness. The United States courts and a number of state courts take the position that since such articles or property were unlawfully secured, they should not be received in evidence, because their admission is tantamount to compelling an accused to be a witness against himself, and their exclusion presents the most practical method of enforcing the guarantee against unreasonable searches and seizures.
 

 But, in some of these cases a formal application be
 
 *173
 
 fore trial has been, made a prerequisite to the exclusion of illegally obtained evidence; in others, an application during the trial has been held sufficient, and in still others such evidence has been excluded upon oral objection when offered.
 

 On the other hand, a majority of the state courts have assumed a different attitude, and hold such evidence admissible on the basis that if it is pertinent to the main issue in the case, a court need not concern itself with the collateral issue of how it was gotten, and further, that the people of the state ought not to be penalized by the suppression of evidence tending to prove an offense against the peace and dignity of the state to shield a criminal from deserved punishment, when the Constitution by its plain language makes no such demand.
 

 These diverse positions have been interestingly and ably discussed in the cases, by text book writers, and by contributors to legal periodicals. For those who may care to pursue the subject, reference is made to the following sources:
 

 People
 
 v.
 
 Defore
 
 (1926), 242 N. Y., 13, 150 N. E., 585
 
 (Certioari
 
 denied, 270 U. S., 657, 46 S. Ct., 353, 70 L. Ed., 784);
 
 State
 
 v.
 
 Rowley
 
 (1923), 197 Ia., 977, 195 N. E., 881;
 
 Meisinger v. State
 
 (1928), 155 Md., 195, 141 A., 536; 142 A., 190, dissenting opinion;
 
 State
 
 v.
 
 Owens
 
 (1924), 302 Mo., 348, 259 S. W., 100, 32 A. L. R., 383;
 
 Commonwealth
 
 v.
 
 Wilkins
 
 (1923), 243 Mass., 356, 138 N. E., 11; 4 Wigmore on Evidence (2 Ed.), Section 2183, page 626
 
 et seq.;
 
 Cornelius on Search and Seizure (2 Ed.), Section 7 (7), page 36
 
 et seq.;
 
 Underhill’s Criminal Evidence (4 Ed.), Section 796, page 1447
 
 et seq.;
 
 1 Wharton’s Criminal Evidence (11 Ed.), Section 373, page 590; 136 Am. St. Rep., 135
 
 et seq.;
 
 24 A. L. R., 1408
 
 et seq.;
 
 32 A. L. R., 408
 
 et seq.;
 
 41 A. L. R., 1145
 
 et seq.;
 
 52 A. L. R., 477
 
 et seq.;
 
 88 A. L. R., 348
 
 et seq.;
 
 19 Illinois Law Review, 303
 
 et seq.;
 
 23 Michigan Law Review, 748
 
 et seq.
 

 
 *174
 
 While the decisions of the United States Supreme Court do not control this court on the issue of immediate concern, they are entitled to respectful consideration.
 
 Boyd
 
 v.
 
 United States,
 
 116 U. S., 616, 6 S. Ct., 524, 29 L. Ed., 746, was decided in 1886. In the trial court, over objection, the defendants had been ordered to produce certain invoices connected with the shipment of goods, under penalty of being bound by the statement of their contents by the prosecution, in accordance with an act of Congress to that effect. The Supreme Court declared defendants’ objection valid and the act unconstitutional, on the ground that under the Fourth Amendment the compulsory production of invoices to furnish evidence for forfeiture of goods constituted an unreasonable search, even where made upon a search warrant, and was also a violation of the Fifth Amendment, in that it compelled the defendant in a criminal case to produce evidence against himself, or be in the attitude of confessing his guilt.
 

 In 1904 the case of
 
 Adams
 
 v.
 
 New York,
 
 192 U. S., 585, 24 S. Ct., 372, 48 L. Ed., 575, came to the Supreme Court from the New York Court of Appeals by writ of error. That case appertained to the seizure of certain private papers having a bearing on gambling operations conducted by the defendant under a warrant in which they were not mentioned. Their admissibility in evidence was sustained on the reasoning and authority of cases holding that a court should not turn aside from the principal issue to decide the collateral issue of how the evidence was procured.
 

 Mr. Justice Day said in the opinion, “The security intended to be guaranteed by the 4th Amendment against wrongful search and seizure is designed to prevent violations of private security in person and property and unlawful invasion of the sanctity of the home of the citizen by officers of the law * * * and to give remedy against such usurpations when attempted. But the English, and nearly all of the American, cases
 
 *175
 
 have declined to extend this doctrine to the extent of excluding testimony which has been obtained by such means, if it is otherwise competent.” Continuing, Mr. Justice Day said of the 4th and 5th Amendments, “We think they were * * * designed to protect against compulsory testimony from a defendant against himself in a criminal trial, and to punish wrongful invasion of the home of the citizen or the unwarranted seizure of his papers and property.”
 

 Next came
 
 Weeks
 
 v.
 
 United States,
 
 232 U. S., 383, 34 S. Ct., 341, 58 L. Ed., 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177, in 1914, wherein letters and private documents were seized in defendant’s home by a United States marshal without a warrant. Application was made before trial for their suppression as evidence and for their return. In holding that such application should have been granted, the Supreme Court abandoned the doctrine approved in the
 
 Adams case
 
 and adopted the exclusion principle to which it has adhered in all succeeding cases.
 

 In the
 
 Weeks case
 
 it was sought to distinguish the
 
 Adams case
 
 on the grounds that the evidence there held admissible was seized as an incident to the execution of a valid warrant, and' that no preliminary application had been made for its suppression and return.
 

 Now, the Supreme Court apparently regards the preliminary application before trial stressed in the
 
 Weeks case
 
 as merely a procedural matter of no real consequence, for in later cases it has held that evidence illegally obtained should be excluded on application made after commencement of the trial, and even upon objection when offered.
 
 Amos
 
 v.
 
 United States
 
 (1921),
 
 supra; Gouled
 
 v.
 
 United States
 
 (1921), 255 U. S., 298, 41 S. Ct., 261, 65 L. Ed., 647.
 

 Furthermore, the rule presently adopted by the Supreme Court that “the 5th Amendment protects every person from incrimination by the use of evidence ob
 
 *176
 
 tained through search and seizure made in violation of his rights under the 4th Amendment”
 
 (Agnello
 
 v.
 
 United States, post),
 
 applies only when such evidence has been thus wrongfully secured by agents of the Federal government acting as such.. In other words, if evidence is improperly seized by state officers, or others, operating independently upon their own account, the Federal government may properly use it against an accused.
 
 Burdeau
 
 v.
 
 McDowell
 
 (1921), 256 U. S., 465, 41 S. Ct., 574, 65 L. Ed., 1048, 13 A. L. R., 1159;
 
 Byars
 
 v.
 
 United States, post
 
 (273 U. S., 28, 33, 47 S. Ct., 248, 71 L. Ed., 520, 524).
 

 It may also be remarked that in adhering to the tenet that evidence illegally obtained should be excluded, the Supreme Court undertakes no distinction in the later cases between papers, documents and other property which one may lawfully have in his possession, and contraband property unlawfully possessed. For example, see
 
 Agnello
 
 v.
 
 United States
 
 (1925), 269 U. S., 20, 46 S. Ct., 4, 70 L. Ed., 145, 51 A. L. R., 409 (cocaine in violation of the Anti-narcotic Act);
 
 Byars
 
 v.
 
 United States
 
 (1926), 273 U. S., 28, 47 S. Ct., 248, 71 L. Ed., 520 (counterfeit strip stamps in imitation of government stamps used on whiskey bottled in bond);
 
 Taylor
 
 v.
 
 United States
 
 (1931), 286 U. S., 1, 52 S. Ct., 466, 76 L. Ed., 951 (whiskey in violation of the National Prohibition Act); and compare
 
 Poulos
 
 v.
 
 United States
 
 (1925), 8 F. (2d) (C. C. A., 6), 120.(cocaine in violation of the Anti-narcotic Act).
 

 And now we come to the decisions of the Supreme Court of Ohio relating to the admissibility in evidence of articles or property secured without a valid search warrant.
 
 Ciano
 
 v.
 
 State
 
 (1922), 105 Ohio St., 229, 137 N. E., 11, was decided under the Crabbe Act,' referred to earlier in this opinion, and it was there held, in the first paragraph of the syllabus, that “Upon the trial of a criminal prosecution, a general objection to the introduction of evidence obtained by search and seiz
 
 *177
 
 ure raises no question other than that of the competency, relevancy and materiality of the evidence tendered, and the court is not required to then examine the collateral question of the regularity of the proceeding whereby such evidence came into the possession, of the prosecution. ”
 

 Rosanski
 
 v.
 
 State
 
 (1922), 106 Ohio St., 442, 140 N. E., 370, and
 
 State
 
 v.
 
 Sabo
 
 (1923), 108 Ohio St., 200, 140 N. E., 499, were also decided under the Crabbe Act. The decisions in those cases as to the matter being discussed rested principally on Section 6212-16, General Code (108 Ohio Laws, Part 2, 1183), and particularly on that part providing “It shall be unlawful to have or possess any liquor, or property designed for the manufacture of liquor, intended for use in violation of law or which has been so used, and no property rights shall exist in any such liquor or property. ’ ’
 

 Prom this premise the argument seems to be that a search and seizure made upon an invalid warrant or without any warrant is not unreasonable under the Constitution if the result is the procurement of contraband property, the possession of which constitutes an offense. Hence, such contraband is unquestionably admissible as evidence. This view accounts, largely, for the fourth and fifth paragraphs of the syllabus in the
 
 Boscmki case,
 
 reading as follows:
 

 “4. In prosecutions for violations of the prohibition laws of Ohio, where the charge involves unlawful possession of intoxicating liquors, a seizure of any contraband property by an officer, whether the seizure has been made under process unlawfully procured or without any process, will not void the seizure, nor authorize an order by a magistrate for a return of such contraband to the person from whose possession the same was taken, unless the seizure was made in a
 
 bona fide
 
 private dwelling.
 

 “5. In such case all such contraband so seized is admissible in evidence upon the part of the state, and
 
 *178
 
 collateral inquiry for the purpose of determining its competency may not be made into the manner of its seizure.”
 

 The second paragraph of the syllabus in
 
 State
 
 v.
 
 Sabo, supra,
 
 is of similar effect.
 

 It will be noted that intoxicating liquors seized in a
 
 bona fide
 
 private dwelling are excepted from the operation of paragraph 4 of the syllabus in the
 
 Roscmski case.
 
 This is explained by reference to Sections 6212-16 and 6212-27, General Code (109 O. L., 6), which made a
 
 bona fide
 
 private dwelling occupied exclusively as such entirely immune from search and seizure under the prohibition laws. In these sections, a
 
 bona fide
 
 private dwelling was defined as one not “used for the unlawful sale of intoxicating liquor” and wherein no liquors “illegally manufactured ór obtained” were possessed. Therefore, all intoxicating liquors were not
 
 per se
 
 unlawful or contraband by the laws of Ohio during the prohibition era,, the possession of which constituted an offense.
 

 One of the cases mainly relied upon in the
 
 Rosanski case
 
 to support the contraband theory approved in both the
 
 Rosanski
 
 and
 
 Sabo cases
 
 is
 
 United States
 
 v.
 
 Snyder
 
 (1922), (D. C.), 278 F., 650, which was reversed in
 
 Snyder
 
 v.
 
 United States
 
 (1922), (C. C. A., 4), 285 F., 1.
 

 The Supreme Court of the United States has definitely rejected the contraband theory as will be seen from a perusal of the several cases cited in a group above. This fact is made particularly plain in
 
 Byars
 
 v.
 
 United States, supra,
 
 where it was held that a search conducted under an invalid warrant was in violation of the federal Constitution, and was not validated by what it produced. And the contraband theory has been adversely criticised in 1 Wharton’s Criminal Evidence (11th Ed.), Sec. 373, page 595; 23 Michigan Law Review, pages 759-761.
 

 An authority specially commended in the
 
 Rosanski case
 
 is
 
 People
 
 v.
 
 Mayen
 
 (1922), 188 Cal., 237, 205 P.,
 
 *179
 
 435, 24 A. L. R., 1383, a frequently cited case, holding that where any competent evidence is produced on a trial the court will not stop to inquire or investigate the source from whence it comes or the means by which it was obtained, even though a motion for an order requiring its return is made before trial.
 

 After discussing
 
 Weeks
 
 v.
 
 United States, supra,
 
 and other like cases decided by the United States Supreme Court up to that time, the California Supreme Court said in the
 
 Mayen case:
 
 “With the utmost deference to the high authority from which this doctrine comes, we do not feel justified in accepting it as a rule of evidence under the law of California and in the application of our state Constitution thereto. ’ ’
 

 It may be said in passing that the Constitution of the state of California and that of the United States contain the same provisions as to searches and seizures and self-incrimination.
 

 In 1932 this court had occasion to decide the case of
 
 Nicholas
 
 v.
 
 City of Cleveland,
 
 125 Ohio St., 474, 182 N. E., 26, where the defendant was charged in the Municipal Court of Cleveland with the unlawful possession of intoxicating liquor in violation of á city ordinance. He was convicted and sentenced, and such action was affirmed by the Court of Appeals. It appeared that before trial, which was also true in the
 
 Bosanski case,
 
 defendant’s counsel made a motion to suppress the evidence seized in defendant’s home, because it had been procured under an illegal warrant, which was overruled. Reversing the Court of Appeals, and remanding the case, this court held that the warrant was illegal and the evidence should have been suppressed in response to the motion. Apparently accepting the doctrine of
 
 Weeks
 
 v.
 
 United States, supra,
 
 the following rule of law is stated in the fifth paragraph of the syllabus of the
 
 Nicholas case:
 

 “If before trial, a motion is made by the accused to suppress the evidence obtained under such illegal
 
 *180
 
 affidavit and warrant, such motion should be sustained by the trial court, and the evidence, so illegally obtained, should be suppressed and not used for the incrimination of the accused.”
 

 Because of the uncertainty existing in our own decisions (which eliminates the problem of
 
 stare
 
 decisis), and because of conflicting decisions in the lower courts of this state, it would seem both wise and necessary to lay down a definite rule unqualifiedly aligning ourselves with either the “admissionists” or “exclusionists.”
 

 Assuming that responsibility, we have reached the conclusion that evidence illegally obtained should not be barred, and the reasons therefor are well and succinctly stated by Dean Albert J. Harno, of the College of Law, University of Illinois, in an article appearing in 19 Illinois Law Review, page 303, at pages 311 and 312, wherein he says:
 

 “The constitutional provision makes an unreasonable search and seizure illegal. But there is nothing in its language changing the rule as to, or in any way affecting, the admissibility of evidence. Searches and seizures shall be legal only under certain conditions. If these are not observed the injured party has his action in trespass. When the issue shifts to a criminal prosecution where the last named individual has become the defendant, by what legerdemain does it now become apropos for him to say: ‘Mr. Constable trespassed, I have an action againt him to be sure, but since he committed this outrageous act, what he saw and procured, though sufficient to convict me of this crime, has become proscribed as evidence, and although I am guilty of the crime charged, you must set me free?’
 

 “The fact is that this raises a collateral issue involving the legality of the search and seizure * * *.
 

 “There is a fundamental distinction between the search and seizure provision of the Constitution and
 
 *181
 
 that which declares that no person ‘ shall be compelled in any criminal case to be a witness against himself.’ Obviously the latter affects the admissibility of evidence, and so it was historically intended. But in examining this privilege certain well defined limitations must be observed. As judicially interpreted the self incrimination clause protects an accused only to the extent that he cannot be compelled by process directed against him as a witness to furnish evidence against himself. No process can compel him to incriminate himself either by coercing him into making oral statements or through compelling him to produce papers or chattels capable of being made the subject of evidence. The individual is immune from testimonial compulsion. Further than that this clause, does not extend.”
 

 Professor Wigmore in his work on Evidence (2 Ed.), Yol. 4, at page 637, speaks rather caustically of the cases which exclude evidence illegally obtained, employing the following language:
 

 “All this is misguided sentimentality. For the sake of indirectly and contingently protecting the Fourth Amendment, this view appears indifferent to the direct and immediate result, viz., of making Justice ineffi-' cient, and of coddling the criminal classes of the population. It puts Supreme Courts in the position of assisting to undermine the foundations of the very institutions they are set there to protect. It regards the over-zealous officer of the law as a greater danger to the community than the unpunished murderer or embezzler or panderer.” And to bring the list more up to date we might add the terms gangster, gunman, racketeer and kidnaper.
 

 Of course, if the state of Ohio should ever deem it expedient as a matter of public policy to declare that evidence wrongfully seized can not be used against a defendant in a criminal case on the basis that its admission encourages the lawless acts of over-zealous officers of the law in their methods of obtaining evi
 
 *182
 
 dence, that would he an entirely different matter which is not our concern here.
 
 People
 
 v.
 
 Mayen, supra.
 

 It follows that the fifth paragraph of the syllabus in
 
 Nicholas
 
 v.
 
 City of Cleveland, supra,
 
 and
 
 Browning
 
 v.
 
 City of Cleveland,
 
 126 Ohio St., 285, 185 N. E., 55, are overruled.
 

 Was the indictment as returned in the instant case insufficient to charge an offense under the statute, by failure to allege that the cartridges and bombs “were charged or filled with one or more explosives?” We think not. The indictment set forth that such articles were unlawfully in defendant’s possession and intended for an unlawful use. Besides, the terms ‘ ‘ cartridge” and “bomb” have accepted and well defined meanings. Mentioned together they immediately suggest explosive objects. Webster’s New International Dictionary (2 Ed.), (G-. & 0. Merriam Co.), defines cartridge as “A case, capsule, shell or bag, of metal, pasteboard, or other material, holding a complete charge for a firearm.” And in the same work bomb is defined as “A projectile containing a high explosive charge.” Similarly, the New Standard Dictionary (Funk & Wagnalls) defines cartridge as “A charge for a firearm, or for blasting, in a case or shell of metal, paper, pasteboard, or cloth,” and bomb as “A hollow projectile of iron, generally spherical, containing an explosive material which is fired by concussion, or by a time-fuse.”
 

 If there had been no proof in this case that the cartridges and bombs contained explosives as defined in Section 5903-1, General Code,
 
 Wechsler
 
 v.
 
 State,
 
 124 Ohio St., 461, 179 N. E., 356, might be invoked; but that is not the complaint. The sufficiency of the indictment only is challenged.
 

 The primary function of an indictment is to inform a defendant of the offense with which he is charged, so that he may prepare for his trial. 21 Ohio Jurisprudence, 680, 710. In our view the present indictment
 
 *183
 
 fulfilled that purpose, and the defendant was in no wise misled or prejudiced.
 

 If defendant was dissatisfied with the form or substance of the indictment, the statutes are replete with remedial measures he might have used to correct such fault. Sections 13437-6, 13439-5, 13439-6, 13439-7, 13439-9, 13439-11, General Code. And see
 
 State
 
 v.
 
 Whitmore,
 
 126 Ohio St., 381, 185 N. E., 547.
 

 Under the liberal provisions of Section 13437-29, General Code, the trial court did not exceed its powers in allowing an amendment of the indictment.
 

 The judgment of the Court of Appeals is reversed and that of the Court of Common Pleas affirmed.
 

 Judgment reversed.
 

 Weygandt, C. J., Stephenson and Williams, JJ., concur.
 

 Jones, Matthias and Day, JJ., concur in the judg-. ment.