Herbert, J.,
dissenting. Although I concur in paragraphs one and three of the syllabus, I must dissent from paragraph two which follows State v. Lindway, 131 Ohio St., 166, 2 N. E. (2d), 490, and the judgment. The facts are sufficiently stated in the majority opinion.
Section 14, Article I of the Ohio Constitution, provides:
“The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated; and no warrant shall'issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the person and things to be seized.”
The judgment in the Lindway case is not in conflict with this constitutional provision. Had I been a member of this court at that time 1 would have joined in the judgment as all the members of the court then did because the evidence there clearly established that the defendant was operating a bomb manufacturing shop in the basement of that house.
*435 As stated by Jones, J., in the concurring opinion in that case:
“This defendant was suspected of manufacturing bombs and of being engaged in the nighttime bombing of the homes of employees of a manufacturing company. If the search produced evidence .of his projected crime, the evidence should have been admitted; for neither Constitution nor state law was intended to provide security for such dangerous enemies to our public peace.”
The foregoing sentence contains ample legal foundation and justification for the judgment affirming the conviction there. As to that portion of the syllabus, however, relating to evidence obtained by an unlawful search — in which only a bare majority concurred — it seems to me to be far too comprehensive and susceptible to abuse by police and prosecution authorities. As a rule, abuses by such officials rarely occur but when they do the constitutional rights, of the private citizen should be fully protected. The broad scope of the rule relating to evidence obtained by an unlawful seareh, as stated in the Lindway syllabus, leads me to the inescapable conclusion that in too many instances it virtually sterilizes the constitutional guarantees provided by Section 14, Article I.
On the basis of the constitutionality of Section 2905.34, Revised Code, which is fully discussed and disposed of in the majority opinion, this case seems to me to afford a perfect opportunity for the court to modify and limit the Lindway rule in the direction indicated by Jones, J., so as to bring it into accord ’ with a more reasonable interpretation of the above-quoted provision of the Constitution and the requirements of the statutes enacted to implement it.
. Section 13035, General Code (now Section 2905.34, Revised Code), provided, from 1910 to 1939, as follows:
“Whoever sells, lends, gives away, exhibits, or offers to sell, lend, give away or exhibit, or publishes or offers to publish or has in his possession for such purpose, an obscene, lewd or lascivious book * * *.” (Emphasis added.)
In fact, the emphasized words read “for any such purpose” from 1894 until 1910.
*436 In 118 Ohio Laws, 420 (1939)-, the emphasized words were stricken and the words, “or has under his control,” were inserted in their place.
In 120 Ohio Laws, 230 (1943), the word, “knowingly,” was inserted after the opening word, “whoever.” In the same act, Section 13035-1, General Code (now Section 2905.35, Revised Code), was passed, providing for the issuance of search warrants for suspected violation of the preceding section and also providing for the disposition of articles seized under such warrants. The last sentence of this search-warrant statute now reads:
“The magistrate shall immediately transmit every article seized by virtue of the warrant, to the prosecuting attorney, who shall, upon conviction of the person from whose possession the same was taken, cause it to be destroyed, and the fact of such destruction to be entered upon the records of the court in which the conviction is had.”
Ironically enough, there being no evidence of the issuance of a search warrant for obscene books, the provisions of this last sentence are not applicable to the disposition of the evidence in the instant case.
In addition to the specific provisions of Section 2905.35, Revised Code, Section 2933.21, Revised Code, provides:
“A judge of a court or a magistrate may, within his jurisdiction, issue warrants to search a house or place:
tí* * *
“(D) For book's, pamphlets, ballads, or printed papers containing obscene language, prints, pictures * * * and for obscene, lewd, indecent, or lascivious drawings, lithographs, engravings, pictures * *
This provision has been in substantially the same form since 1876.
In the light of the Lindway rule and the decision in this case, one may well ask why the Legislature in 1943 enacted Section 13035-1, General Code (now Section 2905.35, Revised Code), particularly in view of the fact that Section 2933.21 (D), Revised Code, has for many years provided for search warrants in such cases.
*437 Under the principle stated by Jones, J., in his concurring opinion in Lindway, a conviction could well be sustained in this case if books had been discovered in the home of defendant in quantities indicating a purpose to sell, lend, give away, exhibit or offer to do so (see “for such purpose,” supra), but on the facts here it seems to the writer that the constitutional right of this defendant “to be secure * * * against unreasonable searches and seizures” was violated.
It is a basic principle that laws restraining the fundamental liberties of the individual must have as their foundation a broad basic public need which overshadows the rights of the individual. While we agree that the dissemination of obscene literature such as that produced in evidence in the present case is and should be against public morals and policy if for no other reason than that the immature mind which might be exposed to it could be greatly harmed, I cannot agree that mere private possession of such literature by an adult should constitute a crime. The right of the individual to read, to believe or disbelieve, and to think without governmental supervision is one of our basic liberties, but to dictate to the mature adult what books he may have in his own private library seems to the writer to be a-clear infringement of his constitutional rights as an individual. Does the state have the power to prohibit the possession of chemistry books because from such books one might learn how to make a bomb or poisonous gas? Is the possession of medical books by a layman to be banned because of the possibility that he might learn about abortion and perhaps put such knowledge to use?
The foregoing paragraph is perhaps more applicable to a discussion of the constitutionality of Section 2509.34, Revised Code, than to the issue on which I dissent, but, since under another provision of the Constitution a bare majority of this court is powerless to invalidate the portion of that section under which the defendant was convicted, we certainly should scan carefully the method by which the evidence was acquired for such conviction. I would hold no brief for the defendant here if the evidence had disclosed a commercial purpose in the possession of these books. Had there been found printing presses with evidence of their criminal use or a sufficient volume of books *438 to indicate the purpose of distribution, commercial or otherwise, we might well hold that the privacy and constitutional immunity of defendant’s home from unlawful search and seizure had been lost by her own conduct (as in the Lindway case where a bomb factory was discovered), but on the undisputed facts, as disclosed in this record, I cannot so conclude. See, also, paragraph two of the syllabus in Ciano v. State, 105 Ohio St., 229, 137 N. E., 11.
As disclosed in 50 A. L. R. (2d), 531, the states are now about evenly divided between the extremes of the so-called federal rule on search and seizure and the rule as stated in JJmdway, indicating a trend away from the Lindway rule since the time of its decision.
A violator of Section 2905.34, Revised Code, may, upon conviction, be either fined, jailed or sent to the penitentiary.
As J ones, J., stated in his concurrence in the Lindway case: “It is not for the class of criminal element alluded to, but for the class embodying millions of citizens who are innocent of any offense or whose offenses are minor, that I urge protection under the search and seizure clause of the state Constitution. The decision of this court in the instant case is too broad, since it is made to apply to everyone suspected of committing any offense whatever. There is one advantage the occupant of a bona fide dwelling now has and always has had — he could discover whether a search warrant had in fact been issued and for, his own protection, could demand its production.”
Here, the defendant did just that and the evidence is uncontradicted that she was not given an opportunity to read it, if any was issued. In fact, it was not even contended by the prosecution that a warrant was ever issued authorizing a search of her home for obscene literature. In my view, the Lindway rule which is being followed in this case should be modified and clarified so that there will no longer be a judicial stamp of approval on the use of unlawful means to justify an end result. Here an admittedly private home was unlawfully searched, and I cannot concur in a judgment upholding conviction based solely on evidence so obtained.
Bell, J., concurs in the foregoing dissenting opinion.