THE STATE OF OHIO, APPELLEE, *v.* WATSON, APPELLANT.

(No. 5255—Decided October 24, 1962.)

Mr. *James V. Barbuto*, director of law, and *Mr. Thomas F. Lynett*, for appellee.
Mr. *R. L. Thompson*, for appellant.

DOYLE, J. The appellant, Irene Watson, was convicted in the Municipal Court of Akron of the crime of having in her custody or under her control "a ticket, order, or device * * * representing a number of shares or an interest in a scheme of chance known as 'policy,' 'numbers game,' 'clearing house,' * * * located in or to be drawn, paid, or carried on within or without this state," in violation of Section 2915.111, Revised Code. Following conviction, a sentence was imposed upon her.

Among fifteen assignments of error, we direct our attention first to the fourth assignment, which appears in the record as follows:

"The court erred in not sustaining appellant's motion to find that the search warrant issued in this cause was fatally defective and void."

The following evidence was developed at the trial:

"State of Ohio    )          Affidavit for
"City of Akron   ) ss.    Search warrant.
"Summit County  )

"George Mullen, being first duly sworn according to law, deposes and says that he has personal knowledge, or knowledge from a reliable source, that gambling paraphernalia, to wit, lottery slips, books, and tickets used in carrying on a lottery are kept in the said County of Summit and State of Ohio, on the premises and all appurtenances thereto and in the building or buildings thereon located, described as follows, to wit: 732 Raymond Street, Akron, Ohio; and that the unlawful possessors of the said gambling paraphernalia are John Doe and Mary Roe

(real names unknown), and that said gambling paraphernalia is being kept and used for the purpose of carrying on a lottery in violation of Section 2915.12 of the Revised Code of Ohio.

"/s/  George L. Mullen,
Affiant.

"Sworn to by said George Mullen and subscribed in my presence this 3 day of November, 1961.

"/s/  Philys G. Barnes,
Notary."

"State of Ohio      )
"City of Akron      )  ss.      Search warrant.
"Summit County   )

"To Any Police Officer of the City of Akron in said County, Greetings:

"Whereas, there has been filed with the undersigned an affidavit of which the following is a true copy:

"George Mullen, being first duly sworn according to law deposes and says that he has personal knowledge, or knowledge from a reliable source, that gambling paraphernalia, to wit, lottery slips, books and tickets used in carrying on a lottery are kept in the said County of Summit and state of Ohio, on the premises and all appurtenances thereto and in the building or buildings thereon located, described as follows: 732 Raymond Street, Akron, Ohio; and that the unlawful possessors of the said gambling paraphernalia are John Doe and Mary Roe (real names unknown), and that said gambling paraphernalia is being kept and used for the purpose of carrying on a lottery in violation of Section 2915.12 of the Revised Code of Ohio.

"/s/  George L. Mullen,
Affiant.

"Sworn to by said George Mullen and subscribed in my presence this 3 day of November, 1961.

"/s/  Philys G. Barnes,
Notary."

"Therefore, you are hereby commanded in the name of the state of Ohio, together with the necessary and proper assistance, to enter in the day time, night time, into said premises, described as aforesaid, and there search for said property as listed aforesaid, and that you bring the same or any part thereof, found in such search before this court to be dealt with according to law.

"Given under my hand this 3 day of November, 1961.

"/s/ Nathan Koplin
Judge of Municipal Court."

"State of Ohio )
"City of Akron ) ss.  Return of search warrant.
"Summit County )

"Received the within warrant on the 3 day of Nov., 1961, at 10:30 o'clock A. M., and pursuant to its command I did on the 3 day of Nov., 1961, at 2:00 o'clock P. M., enter into the premises described in said within warrant, and made seizure of the following described property, to wit: papers used for numbers lottery.

"Arrested Irene Watson 298308.

"Said property being held subject to order of the court at police property room.

"/s/ Geo. Mullen
Lt. George Mullen, Officer."

The search warrant was obtained for the search of a private home, and search was made under its claimed authority.

It is observed that the affidavit for the search warrant shows only that the affiant-police officer Mullen "has personal knowledge or knowledge from a reliable source" that the statute was being violated. The officer testified at the trial that he had no personal knowledge that an offense was being committed, but stated only that he had "received information that there was gambling at that address." Is this "information" sufficient to comply with the statute regulating the contents of affidavits for search warrants?

Section 2933.23, Revised Code, provides:

"A warrant for search shall not be issued until there is filed with the judge or magistrate an affidavit particularly describing the house or place to be searched, the person to be seized, the things to be searched for and seized, and alleging substantially the offense in relation thereto, and that the complainant believes and has good cause to believe that such things are there concealed, *and he shall state the facts upon which such belief is based.* The judge or magistrate may demand other and further evidence before issuing such warrant." (Italics ours.)

A predecessor of this statute (Section 13430-3, General Code), in identical terms, insofar as pertinent to our question, was interpreted by the Supreme Court in *Nicholas* v. *City of Cleveland* (1932), 125 Ohio St., 474. The court ruled:

"4. Where an affidavit for search alleges only that complainant believes and has good cause to believe that the things to be searched for are concealed in a house or place, but does not *state the facts upon which such belief is based,* such affidavit and warrant issued thereunder are illegal and void under the provisions of Section 13430-3, General Code." (Italics ours.)

See, also, *Browning* v. *City of Cleveland,* 126 Ohio St., 285.

The part of the affidavit in which the affiant stated that he had personal knowledge that gambling was conducted on the premises was probably sufficient to comply with the statute requiring facts "upon which such belief is based." However, the affiant refuted his sworn statement by testifying that he had no personal knowledge of such fact. The part of the affidavit stating affiant had knowledge of gambling "from a reliable source" does not comply with statutory requirement. It does not state *facts* upon which his belief was based. Under such circumstances, the affidavit and search warrant issued thereon were illegal and void. "It was obtained and executed in the teeth of the statute. * * * courts, with substantial unanimity, hold that a search made upon an illegal or void warrant is tantamount to a search made without any warrant." *Nicholas* v. *City of Cleveland, supra,* at p. 482.

After *Nicholas* v. *City of Cleveland, supra* (125 Ohio St., 474), was decided by the Supreme Court of Ohio, the case of

*State* v. *Lindway* (1936), 131 Ohio St., 166, came on for hearing. In that case the Supreme Court of Ohio ruled:

"1. The Fourth and Fifth Amendments to the Constitution of the United States, prohibiting unreasonable searches and seizures and compulsory self-incrimination, are directed exclusively against the activities of the Federal Government and have no application to the various states and their agencies.

"* * *

"4. In a criminal case, evidence obtained by an unlawful search is not thereby rendered inadmissible, and, if otherwise competent and pertinent to the main issue, will be received against an accused."

It may be observed from the cases that, on the authority of *State* v. *Lindway, supra,* the courts of this state have consistently followed the rule that, if evidence is otherwise competent, it is admissible in a criminal prosecution, whether or not it was obtained by an unlawful search and seizure.

In the year 1960, the case of *State* v. *Mapp,* 170 Ohio St., 427, came on for hearing. Here, again, the Supreme Court of Ohio followed the ruling made in *State* v. *Lindway.* Paragraph two of the syllabus reads:

"2. A conviction * * * may be valid although that conviction is based primarily upon the introduction in evidence of lewd and lascivious books and pictures unlawfully seized during an unlawful search of defendant's home, where it does not appear that such evidence was taken from defendant's person by the use of brutal or offensive force against defendant. (*State* v. *Lindway,* 131 Ohio St., 166, followed.)"

In due course of appeal, *Mapp* v. *Ohio* was presented on its merits to the Supreme Court of the United States. That court, in reversing the Supreme Court of Ohio, held, in effect, that all evidence obtained by searches and seizures in violation of the Fourth Amendment of the Federal Constitution is, by virtue of the due process clause of the Fourteenth Amendment, guaranteeing the right to privacy free from unreasonable state intrusion, *inadmissible in a state court.* In reversing the Supreme Court of Ohio, the Supreme Court of the United States was required to overrule its own prior decision of *Wolf* v. *Colorado,* 338 U. S., 25, 93 L. Ed., 1782, 69 S. Ct., 1359. *Mapp* v. *Ohio,* 367 U. S., 643, 6 L. Ed. (2d), 1081, 81 S. Ct., 1684.

As a consequence of this recent case (1961), the rule of *State* v. *Lindway, supra,* no longer prevails in this state. Evidence obtained by an unlawful search and seizure is now inadmissible in a state court, as it is in a federal court.

In the case before us, without the wrongfully-acquired evidence (lottery records, etc.), there is no evidence to establish the corpus delicti, and therefore the prosecution fails, despite the fact that the accused woman freely admitted that she was engaged in the criminal activities with which she was charged.

It is the duty of this court to adopt the law as it is pronounced by the Supreme Court of the United States; and, in doing so, we must reverse the judgment of the Municipal Court of Akron and order the appellant discharged.

*Judgment reversed and final judgment for appellant.*

STEVENS, P. J., and HUNSICKER, J., concur.