DECISION AND JUDGMENT ENTRY
{¶ 1} Defendant-Appellant Samuel Fields appeals his two assault convictions in the Scioto County Common Pleas Court. Appellant contends the trial court lacked subject matter jurisdiction because of a defective indictment. He maintains the indictment did not charge a felony offense because it did not contain the R.C. 2903.13(C)(2)(a) enhancement element. Because the indictment contained language that adequately notified him of the enhancement element of each assault, we disagree. Appellant also contends the trial court violated his due process rights by ordering him *Page 2 
shackled during his trial. Because the trial court's decision to do so was supported by the evidence, and therefore not an abuse of its discretion, we disagree. Accordingly, we overrule both of Appellant's assignments of error and affirm the decision of the trial court.
 I. Facts {¶ 2} On November 1, 2005, a Scioto County Grand Jury indicted Appellant on two counts of assault. The indictment read: "Count 1: The Jurors of the Grand Jury * * * do find and present that on or about the 23rd day of August 2005, at Scioto County, Ohio, Samuel J. Fields #488-044 did: act knowingly to cause or attempt to cause physical harm to Correction Officer Steven Carter in violation of Section 2903.13 of the Revised Code, Title: Assault, Section 2903.13, a felony of the fifth degree, and against the peace and dignity of the State of Ohio."
"Count 2: The Jurors of the Grand Jury * * * do find and present that on or about the 23rd day of August 2005, at Scioto County, Ohio, Samuel J. Fields #488-044 did act knowingly to cause or attempt to cause physical harm to Correction Officer Michael Wamsley in violation of Section 2903.13 of the Revised Code. * * *. Title: Assault, Section2903.13, a felony of the fifth degree, and against the peace and dignity of the State of Ohio." *Page 3 
 {¶ 3} Appellant pled not guilty to the charges at his arraignment. On the morning of his trial, Appellant told the court he wished to fire his attorney and proceed pro se. The court granted his request, but ordered his attorney to remain with him for consultation throughout the proceedings.
 {¶ 4} The court then held a security hearing. The state called Thomas Roger Euton, Jr., a correction officer at Southern Ohio Correctional Facility ("SOCF"), as a witness. He testified that when he asked Appellant to exit his prison cell that morning, he refused to come out. He further testified Appellant wore a Ferguson gown at the time, i.e. SOCF had placed him on "close watch." The officer gave his opinion that Appellant "most definitely" presented a very high security risk to the people in the courtroom if left unrestrained. The court then stated to Appellant, "You may cross examine the witness. You have no questions?" Appellant responded, "I mean, I probably got no choice in that anyway * * *." Whereupon, the court excused Euton from the witness stand. The court then found Appellant was a security threat and ordered "that he continue to be bound and handcuffed and shackled during the trial."
 {¶ 5} At the start of voir dire, Appellant informed the court he could not write with his hands bound and, therefore, could not take notes during jury selection. The court stated Appellant would have to do the best he *Page 4 
could. His former attorney came forward to assist Appellant with note taking.
 {¶ 6} The court told the jury pool the fact that Appellant wore handcuffs should not influence their decision. The court also told the jury Appellant wore restraints as "a security measure this Court felt was appropriate, not only for everybody's safety but for his, too."
 {¶ 7} After voir dire, Appellant requested the court reappoint counsel to represent him. The court granted Appellant's request and appointed his former attorney to represent him throughout the remainder of the proceedings.
 {¶ 8} The prosecutor presented testimony that on August 23, 2005, Appellant was incarcerated in the psychiatric ward of the SOCF infirmary. He wore a pair of socks, which SOCF did not permit in the ward. Two SOCF officers attempted to get Appellant to relinquish the socks. When Appellant refused, a struggle ensued. During the struggle, Appellant caused physical harm to the officers.
 {¶ 9} The jury found Appellant guilty as charged in the indictment. The court sentenced him to prison for one year in prison on each count, made the sentences consecutive to each other, and made the two sentences *Page 5 
consecutive to his current sentence. On June 19, 2006, Appellant filed the current appeal.
 II. Assignments of Error {¶ 10} 1. "THE TRIAL COURT ERRED IN FINDING APPELLANT GUILTY AND IMPOSING SENTENCES UPON CHARGES FOR WHICH THE COURT DID NOT HAVE JURISDICTION."
 {¶ 11} 2."THE TRIAL COURT VIOLATED APPELLANT'S RIGHT TO DUE PROCESS BY ORDERING APPELLANT TO BE SHACKLED DURING HIS TRIAL."
 III. First Assignment of Error {¶ 12} In his first assignment of error, Appellant contends the trial court erred in finding him guilty and sentencing him on two fifth degree felony counts of assault. Appellant contends, because the indictment did not contain an enhancement element for each alleged assault, the judgment finding him guilty of both fifth degree felony assaults is void for lack of subject matter jurisdiction pursuant to State v.Cimpntz (1953), 158 Ohio St. 490, 110 49 O.O. 418, NE.2d 416. He also cites State v. Hous, 2nd Dist. No. 02CA116, 2004-Ohio-666 (holding an indictment was defective for its failure to include any reference to the deadly weapon/dangerous ordnance element of aggravated robbery) in support. The state contends Appellant waived any error by failing to object to deficiencies in the indictment. *Page 6 
However, we find Field's argument challenges the court's subject matter jurisdiction; thus, we will address it.
 {¶ 13} "A judgment of conviction based upon an indictment which does not charge an offense is void for lack of jurisdiction of the subject matter may be successfully attacked either on direct appeal to a reviewing court or by a collateral proceeding." Cimpritz,158 Ohio St. 490, at paragraph six of the syllabus. "The sufficiency of an indictment is a question of law which we review de novo." State v. Smith, 4th Dist. No. 06CA7, 2007-Ohio-502, at ¶ 26. See, also, State v. Beaumont (1964),4 Ohio App.2d 212, 33 O.O.2d 253, 211 N.E.2d 671.
 {¶ 14} The primary purpose of an indictment is to notify a defendant of the offense with which he is charged to enable his preparation for trial. State v. Lindway (1936), 131 Ohio St. 166, 182, 5 O.O. 538,2 N.E.2d 490. An indictment must contain a statement that the defendant has committed a public offense that is specified in the indictment. Crim.R. 7(B). "The statement may be made in ordinary and concise language without technical averments or allegations not essential to be proved. The statement may be in the words of the applicable section of the statue, provided the words of that statute charge an offense, or in words sufficient to give the defendant notice of all the elements of the offense with which the defendant is charged." Id. *Page 7 
 {¶ 15} R.C. 2903.13(A) provides: "No person shall knowingly cause or attempt to cause physical harm to another * * *." Pursuant to R.C.2903.13(C), "[w]hoever violates this section is guilty of assault. Except as otherwise provided in division (C)(1), (2), (3), (4), or (5), assault is a misdemeanor of the first degree if "[t]he offense occurs in or on the grounds of a state correctional institution * * *, the victim of the offense is an employee of the department of rehabilitation and correction, * * * and the offense is committed by a person incarcerated in the state correctional institution * * *."
 {¶ 16} Appellant contends the state failed to indict him with fifth degree felony assault because it failed to include allegations in the indictment that the offense occurred in a state correctional institution and that he was incarcerated at the time of the offense as provided by R.C. 2903.13(C)(2)(a). He concludes a deficient indictment, pursuant toCimpritz, is void. The state asserts it remedied the omissions to the indictment by including the necessary allegations in the bill of particulars.
 {¶ 17} Pursuant to R.C. 2945.75(A)(1), "[w]hen the presence of one or more additional elements makes an offense one of more serious degree: (1) The affidavit, complaint, indictment, or informationeither shall state the degree of the offense which the accused is alleged to have committed, or *Page 8 
shall allege such additional element or elements. Otherwise, such * * * indictment * * * is effective to charge only the least degree of the offense." (Emphasis added). The statute makes clear that either stating the degree of the offense or alleging degree-enhancing elements creates an effective indictment in a case such as this one.
 {¶ 18} In reading CrimR. 7(B), which provides an indictment must give the defendant notice of all the elements of the offense, and R.C.2945.75(A)(1) together, it appears the legislature intended for the "degree of the offense" to adequately give notice to a defendant of the enhancement element contained within the statute.
 {¶ 19} Here, the indictment notified Appellant of the degree of the offense. The indictment plainly states the alleged offense, i.e., R.C.2903.13 is a fifth-degree felony. The state used language within the indictment that comports with CrimR 7(B) and R.C. 2945.75(A)(1). Thus, Appellant received adequate notice of the enhancement element contained in R.C. 2903.13(C)(2)(a). Stated differently, the only way the state could prove each assault was "a felony of the fifth degree" was to show Appellant committed the assault in or on the grounds of a state correctional institution, the victim was an employee of the department of rehabilitation and correction, and Appellant was incarcerated in the state correctional intuition. *Page 9 
 {¶ 20} The Ohio Supreme Court has recently found that an indictment that referenced a predicate offense by statue number, instead of including each element of the predicate offense, gave adequate notice to the defendant of the charge against him. State v. Buehner,110 Ohio St. 3d 403, 2006-Ohio-4707, 853 N.E.2d 1162, syllabus (stating that "[a]n indictment that tracks the language of the charged offense and identifies a predicate offense by reference to the statute number need not also include each element of the predicate offense in the indictment.").
 {¶ 21} Similarly, here, the indictment gave adequate notice when it referenced the degree of the offense. In addition, the state provided Appellant with a bill of particulars that notified him of the enhancement element in more detail. The trail court also gave an instruction to the jury regarding the enhancement element.
 {¶ 22} Thus, the trial court did not err when it found Appellant guilty of both assaults, felonies of the fifth degree, and sentenced him accordingly. Consequently, the trial court has subject matter jurisdiction to convict and sentence Appellant for both assaults. Accordingly, we overrule Appellant's first assignment of error. *Page 10 
 IV. Second Assignment of Error {¶ 23} In his second assignment of error, Appellant contends the trial court abused its discretion when it ordered him to remain handcuffed and shackled during trial. Specifically, Appellant challenges the trial court's decision because it did not offer Appellant a full security hearing; it did not allow Appellant to cross-examine or call witnesses or testify on his behalf; it told the jury Appellant was shackled for everyone's safety and, furthermore, the shackles prevented Appellant from participating in his trial.
 {¶ 24} We first note Appellant failed to object to the restraints during trial, thus Appellant must demonstrate plain error or the issue has been waived. Plain error exists only when it is clear the verdict would have been otherwise but for the error. State v. Sanders,92 Ohio St.3d 245, 263, 2001-Ohio-0189, 750 N.E.2d 90. Plain error places three limitations on a reviewing court's decision to correct an error not objected to during trial. First, there must be legal error. Second, the error must be "plain." Within the meaning of Crim.R. 52(B), an error is "plain" if there is an "obvious" defect in the trial proceedings. Third, the error has to affect "substantial rights." State v. Barnes,94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240. "We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." Id. *Page 11 
 {¶ 25} "Even if a forfeited error satisfies these three prongs, however, Crim.R. 52(B) does not demand that an appellate court correct it. CrimR. 52(B) states only that a reviewing court `may' notice plain forfeited errors; a court is not obliged to correct them. We have acknowledged the discretionary aspect of Crim.R. 52(B) by admonishing courts to notice plain error `with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" Id., quotingState v. Long (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804.
 {¶ 26} Because the presence of restraints erodes the presumption of innocence, the usual practice is for a defendant to appear in court unshackled, "[b]ut it is widely accepted that a prisoner may be shackled where there is danger of violence or escape." State v. Franklin,97 Ohio St.3d 1, 2002-Ohio-5304, 776 N.E.2d 26, at ¶ 79. "The decision to impose such a restraint is left to the sound discretion of the trial court * * * which is in a position to consider the prisoner's actions both inside and outside the courtroom, as well as his demeanor while court is in session. We also note that a court need not sit by helplessly waiting for a defendant to commit a violent or disruptive act in the courtroom before being cloaked with the power to invoke extra security measures." Id. Therefore, absent an abuse of discretion, we will not reverse the trial court's decision. *Page 12 
 {¶ 27} Appellant argues the trial court violated his right to due process in that it did not provide a full security hearing. He contends, during the hearing, the trial court did not allow him to cross-examine witnesses or testify on his own behalf. However, the Ohio Supreme Court has held, in some instances, a defendant my be put in restraints during trial without even holding a security hearing. "Although we stress that the preferred and encouraged practice prior to handcuffing a defendant during any phase of trial is to hold a hearing on the matter, we do not find this to be an absolute rule. Where the facts and circumstances surrounding a defendant illustrate a compelling need to impose exceptional security procedures, the trial court's exercise of discretion in this regard should not be disturbed unless its actions are not supported by the evidence before it." Id. at ¶ 82. If the trial court's actions are supported by the evidence, an appellate court should not disturb the trial court's exercise of discretion, whether or not a hearing was held. State v. Evans, 4th Dist. No. 05CA3002,2006-Ohio-2564, at 39¶ .
 {¶ 28} Here, the trial court did hold a hearing on whether Appellant should be shackled during trial. From that hearing and the record, we can determine whether the facts and circumstances surrounding the trial court's decision to shackle Appellant was supported by the evidence. *Page 13 
 {¶ 29} The record indicates at the time of the security hearing, Appellant was incarcerated at the Southern Ohio Correctional Facility (SOCF), one of Ohio's maximum security prisons. Courts have found when a defendant on trial is already incarcerated for a previous offense, his status as an inmate lessens the prejudice flowing from the jury seeing the defendant in restraints. See Harlow v. State, 2005 WY 12;105 P.3d 1049; Hill v. Commonwealth, 125 S.W.3d 221, 236; 2004 Ky. LEXIS 11;State v. Woodard, 121 N.H. 970, 974; 437 A.2d 273.
 {¶ 30} Appellant was on trial for two counts of assault on correctional officers at SOCF. The altercation was violent enough that, though Appellant was left with no serious injuries, one of the correctional officers involved sustained a broken hand and fingers and required surgery on his knee. After the incident, Appellant did not allow himself to be examined for injury, instead he threatened the nurse attempting to examine him. At the time of the assault, Appellant was in a psychiatric ward and on "constant watch," a kind of twenty-four hour surveillance, in a designated crisis holding cell. Inmates are placed on constant watch when they present a danger to themselves or others.
 {¶ 31} On the morning of his transport to court for his security hearing and trial, Appellant was still on constant watch. That morning, *Page 14 
Appellant initially disobeyed corrections officers and refused to leave his cell. The transporting corrections officer who testified at the hearing stated he believed Appellant was simply trying to be difficult. During the hearing, the trial court asked the transporting officer if he believed there was a potential for a security risk during trial if Field was not restrained; the corrections officer replied, "most definitely, yes." Further, when asked if Appellant would present a risk to people in the courtroom if left unrestrained, the transporting officer stated Appellant presented "[a] very high risk."
 {¶ 32} In light of the facts and circumstances stated above, we find the trial court's decision to shackle Appellant was supported by the evidence. The trial court did not abuse it's discretion in deciding there was a compelling need to impose exceptional security procedures on Appellant.
 {¶ 33} Appellant argues the security hearing was insufficient, yet when the trial court asked if he wanted to cross-examine the corrections officer, he declined, stating "I mean, I probably got not choice in that anyway * * *." During the hearing, Appellant was acting without counsel against the advice of the trial court. Considering Appellant's refusal to meaningfully participate in the hearing, it was not unreasonable for the trial court to proceed as it did. *Page 15 
 {¶ 34} Appellant also argues the trial court violated his due process by telling the jury Appellant was shackled for everyone's safety. The trial court did remark to the jury that Appellant was wearing handcuffs. However, the trial court properly tried to lessen any prejudice the restraints may have caused by instructing the jury that "[y]ou cannot let that in any way make you believe he is guilty of anything. It is just a security measure this court felt that was appropriate, not only for everybody's safety but for his, too."
 {¶ 35} The trial court arguably could have ordered Appellant shackled without conducting a hearing, considering the totality of the circumstance involved. However, the trial court did conduct a hearing, accepted testimony, and made a rational decision supported by evidence in the record. This court has previously held "Vith or without ahearing, an appellate court will not disturb the trial court's exercise of its discretion to impose restraints if the record demonstrates `a compelling need to impose exceptional security procedures.'"Evans at ¶ 39. (Emphasis added). Here, the record clearly demonstrates such a compelling need.
 {¶ 36} Additionally, though we find the trial court did not abuse its discretion in deciding to shackle Appellant, we also note Appellant has failed to show plain error. Plain error only exists when it is clear the verdict *Page 16 
would have been otherwise but for the claimed error; the error must have affected the outcome of the trial. Furthermore, a finding of plain error is discretionary and appellate courts should only do so `with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" Barnes, 94 Ohio St.3d at 27. Here, considering the totality of circumstances, Appellant has failed to show the trial court's decision to shackle him was a manifest miscarriage of justice. He has further failed to show that, had he not been shackled, the verdict would have been otherwise.
 V. Conclusion {¶ 37} Because Appellant's indictment contained language that adequately notified him of the enhancement element of each assault, his indictment for those assaults was not defective. As such, the trial court had proper subject matter jurisdiction. Furthermore, the trial court did not violate Appellant's due process rights by putting him in restraints during trial. In doing so, the trial court did not abuse its discretion because the facts and circumstances surrounding its decision was supported by the evidence. Accordingly, we overrule both of Appellant's assignments of error and affirm the decision of the trial court.
 JUDGMENT AFFIRMED. *Page 17 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J.: Concurs in Judgment and Opinion.
Kline, J.: Concurs in Judgment and Opinion as to Assignment of Error I and
Dissents as to Assignment of Error II. *Page 1