Jones, J.
 

 On April 1, 1929, the Legislature of Ohio adopted a Code, codifying the state’s laws of criminal procedure. This Code repealed,
 
 in toto,
 
 the then existing chapter of the General Code relating to search warrants. In the newly enacted Code (113 Ohio Laws, 137), under the title “Search Warrants,” the Legislature adopted the following provision controlling the future issue of search warrants (Section 13430-3, General Code): “A warrant for search shall not be issued until there is filed with the
 
 judge or
 
 magistrate, an affidavit particularly describing the house or place to be searched, the person to be seized,
 
 if any,
 
 the things to be searched for
 
 and seised,
 
 and alleging substantially the offense in relation thereto, and that the complainant believes and has good cause to believe that such things are there concealed,
 
 and he shall state the
 
 
 *478
 

 facts upon which such belief is based. The judge or magistrate shall have authority to demand other and further evidence before issuing such warrant.”
 

 This section supplanted what was formerly Section 13483, General Code, adding thereto the foregoing italicized words and clauses which are now found in the newly enacted section. In this case it is admitted that the complainant, who signed the affidavit, did not go before any judge or magistrate, but went to the clerk’s office where he had the affidavit signed by the municipal court clerk’s deputy. It is needless now to decide what powers the clerk of the municipal court may or may not have had to issue warrants under the Ohio laws as they existed prior to 1929; for it is plainly evident that, by the new legislation, the Legislature contemplated that a judge or magistrate, and not a clerk, could issue a warrant for search. The present section contains no ambiguous language; it
 
 explicitly
 
 states that a search warrant shall not be issued until the affidavit is filed with the judge or magistrate. After the affidavit is filed, the power of determining whether a search warrant shall issue is clearly judicial. This is evidenced not only by the fact that the affidavit must be filed with the judge or magistrate, but the complainant is now required not only to state that he believes, and has good cause to believe, that the things to be searched for are concealed, but must also “state the facts upon which such belief is based.” This was not required under the old section governing search warrant procedure. That the act of search warrant issuance is judicial and not ministerial is further evidenced by the last clause of Section 13430-3, General Code, which recites that ‘ ‘ the judge or magistrate shall have authority to demand other and further evidence before issuing such warrant.” Should we so construe Section 13430-3, General Code, as conferring judicial powers upon a clerk, we would be subject to the just criticism of legislation by judicial de
 
 *479
 
 cisión. The clerk is merely a ministerial officer; his function is to carry out the orders of the judge. When the judge has decided in favor of the issuance of the writ, he may, if he so desires, authorize his clerk to issue the warrant in conformity with his order. Section 1579-41, General Code, authorizes the municipal court clerk “to issue and sign all writs, process and papers issuing out of the court.” “The granting of a search warrant is a matter for judicial determination and not within the much more limited field of the discretion vested in executive or administrative officers. ’ ’
 
 Hoyer
 
 v.
 
 State,
 
 180 Wis., 407, 193 N. W., 89, 27 A. L. R., 673.
 

 By the adoption of Section 13430-3, the Legislature has endeavored with scrupulous care to safeguard the rights of the people against unreasonable searches and seizures of their private dwellings, a right guaranteed by the Constitution of the state. The search law now requires that an affidavit must be filed with the judge describing (1) the place to be searched; (2) the person to be seized; (3) the thing searched for; (4) that the complainant believes or has good cause to believe that the things are there concealed; and (5) the complainant must state the facts upon which such belief is based. It was undoubtedly the purpose of the Legislature to require the complainant filing an affidavit to conform to the various particulars of that section, so that an officer executing a John Doe warrant, as in this case, could search only the particular place described in the affidavit and could seize only the person named in the affidavit, if his name be known.
 

 In view of the clear and express language employed in the later legislation controlling the issue of warrants for search, there is no need for judicial interpretation, and, at this point, we might rest this decision, were it not for the fact that the prosecution relies especially upon another section of the General Code, as conferring upon a municipal clerk power to issue
 
 *480
 
 a search warrant without the intervention of a judge. This is Section 4594, General Code, considered by this court in the case of
 
 Rosanski
 
 v.
 
 State,
 
 106 Ohio St., 442, 140 N. E., 370; and in this connection we should keep in mind that the present legislation, relating to search warrants, was passed more than six years after that decision was rendered. Section 4594, General Code, provides
 
 inter alia
 
 that the clerk of a police court, when an affidavit has been filed with him, is empowered to issue a warrant for search. This was part of a special act relating to police court clerks only. The legislation of 1929 is much later, and is a general law relating specifically to search warrant procedure. The two acts cannot ride together, and, since they are irreconcilable, one or the other must fall. In such a situation this court has frequently declared that, when there has been incompatible legislation upon a particular subject, the later law prevails. In
 
 State, ex rel. Guilbert,
 
 v.
 
 Halliday, Aud.,
 
 63 Ohio St., 165, 57 N. E., 1097, the syllabus reads: “In so far as two statutes are irreconcilable, effect must be given to the one which is the later.” See, also,
 
 State, ex rel. Crabbe,
 
 v.
 
 City of Cleveland,
 
 115 Ohio St., 484, 154 N. E., 738. Section 13430-3, General Code, is general in its scope. It explicitly provides that a warrant for search shall not be issued until an affidavit has been filed with the judge, and that the judge, before issuing the warrant, shall have authority to demand other and further evidence. In so far as this feature of search warrant issuance is concerned, Section 4594, General Code, must be deemed to have been superseded by the later act of 1929. Furthermore, if the contention of the prosecution be upheld, if both statutes were permitted to stand, one giving power to police court clerks to issue warrants without judicial supervision, and the other requiring judges or magistrates to pass upon the affidavit for search, this would create an anomalous situation amounting to a legal paradox. It would
 
 *481
 
 permit police court clerks, within the narrow geographical limits of a city, to issue warrants at will; but, in counties, would require their issuance by a judge or magistrate. That is to say, assuming that a warrant is applied for to search a dwelling in the city of Cleveland, if the complainant files his affidavit with a judge of the Cuyahoga county common pleas court, judicial determination to issue is required; but if he files it with a clerk of the municipal court of that city, Section 13430-3, General Code, can be ignored. The Legislature never intended by this later legislation to bring about such an absurd result.
 

 Liquor prosecutions under the state law are generally brought under what is known as the “Crabbe Act.” Section 6212-16, General Code, provides that, in liquor prosecutions under the act, “a search warrant may issue, and proceedings had thereunder, as provided in * * * [Section 13483] General Code,” so far as it may apply. However Section 13483, General Code, was specifically repealed by the legislation of 1929 and there is now no method of obtaining a search warrant under the “Crabbe Act” except by invoking the provisions of Section 13430-3, which supersede Section 13483, General Code. It is obvious that the
 
 Rosanski case, supra,
 
 is no> longer applicable, for Section 13483, General Code, which was there under consideration, has been repealed. Under the new legislation the issuance of a search warrant is no longer a ministerial act conferred upon a clerk, but a judicial act conferred upon the judge or magistrate. Nor does the
 
 Bosanski case
 
 hold that a seizure made in a
 
 bona fide
 
 dwelling, without a warrant or under an illegal warrant, is lawful. The holding is otherwise, as the syllabus discloses.
 

 Guided by the clear and express provisions of Section 13430-3, which are now in force, this court can come to no conclusion but this — that no clerk of any court now has power to issue search warrants except
 
 *482
 
 upon the order of the judge before whom the affidavit was filed; and that the sole power of determining whether or not a search warrant shall issue rests with the judge, who, by the terms of the statute, has' authority “to demand other and further evidence before issuing such warrant.”
 

 There is another impelling reason why the search warrant in this case is illegal and void. It was obtained and executed in the teeth of the statute. The courts, with substantial unanimity, hold that a search made upon an illegal or void warrant is tantamount to a search made without any warrant. This case involves the search of a private dwelling. The affidavit for the warrant so states, and the officer who executed it admits it; nor was there any evidence of sale or traffic upon the premises. The present law, Section 13430-3, General Code, requires the complainant not only to state in his affidavit that he believes, or has good cause to believe, that the things are concealed, but it also requires that “he shall state the facts upon which such belief is based.” There were no facts stated in the affidavit for search in the instant case. The affidavit left the determination whether there was probable cause for search in the judgment of the complainant. The complainant may not have had any fact or justifiable information to sustain his belief, or he may have obtained his information from an anonymous source which no reasonable man would take cognizance of; or the complainant may have been actuated by malice, or by some ulterior motive against the accused. Under the old statutory procedure there was no method provided for determining whether the facts and surroundings justified the existence of the probable cause for search. The institution and execution of the warrant were confided to the conscience and honesty, or dishonesty, of the complainant himself. Upon this feature of the case, in characterizing such forms of accusation, Judge Cooley said: “Charges are
 
 *483
 
 not verified by an affidavit that somebody is informed and believes they are true. This is mere evasion of the law: the most improbable stories may be believed of any one, and the man most free from any reasonable suspicion of guilt is not safe if he holds his freedom at the mercy of any man three hundred miles off who will swear that he has been informed and believes in his guilt. It is easy to tell falsehoods, and those who are least fitted to judge of their credibility are generally the very persons who will believe them because they are told. But to substantiate charges within the meaning of the law evidence is required, and not merely suspicions or information or beliefs.”
 
 Swart
 
 v.
 
 Kimball,
 
 43 Mich., 443, 451, 5 N. W., 635, 640. No doubt these and other reasons actuated the Legislature of Ohio when, following the path of other states, it adopted in 1929 the newly enacted provisions requiring that affidavits for search warrants should state the facts upon which complainant’s belief is based. Courts of various jurisdictions, both state and federal, had theretofore held that affidavits, based upon belief and not upon facts, violated the guaranties of the state and Federal Constitutions securing the people against unreasonable search and seizures. And it is very probable that, because of the conflict of decisions in some of the jurisdictions upon that constitutional phase, this new legislation came to be adopted in order to avoid any question of its constitutionality. The many cases holding that such affidavits were constitutionally void, unless the statement of facts appeared therein, are collated in the copious notes attached to the text in Cornelius on Search and Seizure (2d Ed.), p. 414. Among the many cases cited in support of the unconstitutionality of statutes based upon belief only is that of
 
 Smoot
 
 v.
 
 State,
 
 160 Ga., 744, 128 S. E., 909, 41 A. L. R., 1533, where the Supreme Court held that “the existence of probable cause is not a matter for the conclusion of the affiant, but is a fact to be judi
 
 *484
 
 cially determined by the magistrate issuing the warrant from facts submitted to him supported by oath or affirmation. A search warrant supported only by an affidavit based upon information and belief is wholly void and inadmissible in evidence for any purpose.” Other cases arising in state courts support that view.
 

 In
 
 Agnello
 
 v.
 
 United States,
 
 269 U. S., 20, at page 33, 46 S. Ct., 4, 6, 70 L. Ed., 145, 51 A. L. R., 409, the high federal court said: “Belief, however well founded, that an article sought is concealed in a dwelling house furnishes no justification for a search of that place without a warrant. And such searches are held unlawful notwithstanding facts unquestionably showing probable cause.” And in the later case of
 
 Byars
 
 v.
 
 United States,
 
 273 U. S., 28, 47 S. Ct., 248, 71 L. Ed., 520, the United States Supreme Court held that a search warrant based upon information, stating that affiant had good reason to believe and did believe that the defendant had in his possession intoxicating liquors, was invalid under the Federal Constitution and laws; and in the same case it held that a search prosecuted in violation of the Constitution was not made lawful by what it brought to light.
 

 "While we are not bound by federal decisions upon this feature of the case, since the Bill of Rights in the Constitution of the United States is in almost the exact language of that found in our own, the reasoning of the United States court upon this aspect of the case should be very persuasive. The state courts, however, with practical unanimity, have adopted the same principle as the federal courts. Article I, Section 14 of the Ohio Constitution, reads: “The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the person and things to be seized.”
 

 
 *485
 
 In
 
 Weeks
 
 v.
 
 United States,
 
 232 U. S., 383, 392, 34 S. Ct., 341, 58 L. Ed., 652, L. R. A., 1915B, 834, Ann. Cas., 1915C, 1177, Mr. Justice Day, speaking for the court, said that the effect of the federal amendment was
 
 “to
 
 forever secure the people, their persons, houses, papers and effects against all unreasonable searches and seizures under the guise of law. This protection reaches all alike, whether accused of crime or not, and the duty of giving to it force and effect is obligatory upon all entrusted under our Federal system with the enforcement of the laws. The tendency of those who execute the criminal laws of the country to obtain conviction by means of unlawful seizures and enforced confessions, the latter often obtained after subjecting accused persons to unwarranted practices destructive of rights secured by the Federal Constitution, should find no sanction in the judgments of the courts which are charged at all times with the support of the Constitution and to which people of all conditions have a right to appeal for the maintenance of such fundamental rights.” And in the late case of
 
 Go-Bart Importing Co.
 
 v.
 
 United States,
 
 282 U. S., 344, 51 S. Ct., 153, 75 L. Ed., 374, decided January 5, 1931, Mr. Justice Butler, speaking of the search and seizure provisions of the Federal Constitution, said: “It is general and forbids every search that is unreasonable; it protects all, those suspected or known to be offenders as well as the innocent, and unquestionably extends to the premises where the search was made and the papers taken.
 
 Gouled
 
 v.
 
 United States,
 
 255 U. S., 298, 307, [41 S. Ct., 261, 65 L. Ed., 647]. The second clause declares: ‘and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.’ This prevents the issue of warrants on loose, vague or doubtful bases of fact.
 
 *486
 
 It emphasizes the purpose to protect against all general searches. Since before the creation of our government, such searches have been deemed obnoxious to fundamental principles of liberty. They are denounced in the constitutions or statutes of every State in the Union.”
 

 Many cases may be found in the reports touching the constitutional feature safeguarding the rights of the people to be secure against unreasonable searches and seizures; and they uniformly uphold such rights when a search is made of a
 
 bona fide
 
 dwelling or residence of the accused; and if the search be without warrant or upon a void warrant, incriminating articles found within such dwellings cannot be used against the occupant to bring about his conviction.
 

 The court is of the opinion that a search can be made in this state only by complying with the amended statute (now Section 13430-3, General Code) which specifically requires that in the affidavit for search the complainant must state the facts upon which his belief is based; and that this requirement was placed in the statute in order that the judge or magistrate issuing such warrant might determine, for himself, whether the facts stated in the affidavit were sufficient for him to issue it, and not leave that determination, as formerly, to the whim, caprice or belief of the complainant.
 

 In the instant case the affidavit for search was not filed with a judge; nor did it state the facts upon which the complainant’s belief was based. For these reasons the search warrant was void; and being void, the things seized in the defendant’s dwelling cannot be used against the accused to incriminate him. It follows that the judgments of the lower courts should be reversed and the cause remanded to the municipal court with instructions to suppress the evidence seized
 
 *487
 
 in the unlawful search, and for further proceedings according to law.
 

 Judgments reversed and cause remanded.
 

 Matthias, Day, Allen, Kinkade and Stephenson, JJ., concur.
 

 Marshall, C. J., not participating.