J ones, J.,
 

 concurring. In connection with two of my associates I am concurring only in the judgment. Since this record discloses that the premises searched was used otherwise than as a private dwelling, I concur in the judgment of reversal on authority of
 
 Ciano
 
 v.
 
 State,
 
 105 Ohio St., 229, 137 N. E., 11. I would concur for another reason, to which I shall later allude.
 

 Upon the substantive law of the case, the majority opinion states that, “Because of the uncertainty existing in our own decisions * * * it would seem both wise and necessary to lay down a definite rule,” etc. There is no uncertainty in our own decisions. Never has our court indicated that a search of a
 
 tona fide
 
 dwelling could be made without a search warrant. And if there were any uncertainty, the rule has been definitely established by our court in
 
 Nicholas
 
 v.
 
 City of Cleveland,
 
 125 Ohio St., 474, 182 N. E., 26, which
 
 *184
 
 held that a search of a private dwelling cannot be made without a statutory warrant issued in compliance with Section 13430-3, General Code. That case was concurred in by every judge who participated. Later, in
 
 Browning
 
 v.
 
 City of Cleveland,
 
 126 Ohio St., 285, 185 N. E., 55, the
 
 Nicholas case
 
 was definitely approved and concurred in by every participating judge.
 

 On the constitutional question involved, the Supreme Court of the United States has consistently held adversely to the rule announced in the syllabus. This the majority opinion concedes. It also concedes that the language of the federal Constitution pertaining to search and seizure is almost exactly similar to that employed in our own. Many courts have alluded to the fact that the federal provisions relating to search and seizure are the parent of the state constitutions, whose provisions were taken from the federal. It has always been a rule of statutory construction that, when a state adopts the language employed in a federal statute, the construction given by the United States Supreme Court will be regarded as persuasive, if not controlling, upon the state court. In my opinion in the
 
 Nicholas case, supra,
 
 I referred to this rule of construction. Only recently the Supreme Court of Ohio announced the same rule of construction in
 
 McNary
 
 v.
 
 State,
 
 128 Ohio St., 497, 191 N. E., 733; and it was more recently followed in,
 
 State
 
 v.
 
 Huffman, ante,
 
 27. The rule applying to the construction of statutes also applies to the construction of constitutional provisions as well.
 

 Many offenses are penalized by state as well as by federal law, both penalizing the same criminal act. Under the rule of construction adopted by the majority, if the offender should have the misfortune of being tried in a state court for the same identical offense, the evidence would be admissible; but should he be fortunate enough to be tried in a federal court, the evidence would be inadmissible. This court should
 
 *185
 
 not acquiesce in a procedure so anomalous. This diversity of criminal procedure does not appeal to my idea of a consistent system under our American jurisprudence. This feature should furnish an abundant reason why the ruling of this court should harmonize with that of the high federal court and, speaking for myself, it furnishes a cogent reason why we should follow the legal views pronounced by the nine judges of the United States Supreme Court rather than those of the dean of a law school in a western college.
 

 Article I, Section 14, of the Ohio Constitution reads: “The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall
 
 not be violated;
 
 and no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the person and things to be seized.” What becomes of that covenant with the people that “The right of the people to be secure in their * * * houses * * * shall not be violated”? Under this decision, this constitutional provision will have no virtue; it will have been deprived of virility; in short, it would be nullified by judicial decree. And so also Section 13430-3, General Code, which minutely prescribes what the search warrant must contain, will have no legislative efficacy. This cannot well be denied.
 

 There can be no doubt where the federal courts stand upon this question. The case of
 
 Weeks
 
 v.
 
 United States,
 
 232 U. S., 383, 58 L. Ed., 652, 34 S. Ct., 341, L. R. A. 1915B, 834, Mr. Justice Day, writing the opinion, said that the effect of the federal amendment was “to forever secure the people, their persons, houses, papers and effects against all unreasonable searches and seizures under the guise of law. This protection reaches all alike * * * and the duty of giving to it force and effect is obligatory upon all entrusted under our Federal system with the1 enforcement of the
 
 *186
 
 laws.” He further said that certain unwarranted practices destructive of the rights of the people “should find no sanction in the judgments of the courts which are charged at all times with the' support of the Constitution and to which people of all conditions have a right to appeal for the maintenance of such fundamental rights.”
 

 Seventeen years later, in
 
 Go-Bart Importing Co.
 
 v.
 
 United States,
 
 282 U. S., 344, 75 L. Ed., 374, Mr. Justice Butler commented on the federal provision which declares, “and no warrants shall issue, hut upon prob‘able cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.” This is in the exact language of the provision in our own Constitution. In speaking of this clause, Justice Butler said:
 

 “This prevents the issue of warrants on loose, vague or doubtful bases of fact. It emphasizes the purpose to protect against all general searches. Since before the creation of our government, such searches have been deemed obnoxious to fundamental principles of liberty. They are denounced in the constistutions or statutes of every state in the Union.
 
 Agnello
 
 v.
 
 United States,
 
 269 U. S., 20, 33 [70 L. Ed., 145, 51 A. L. R., 409, 46 S. Ct., 4]. The need of protection against them is attested alike by history and present conditions. The Amendment is to be liberally construed and all owe the duty of vigilance for its effective enforcement lest there shall be impairment of the rights for the protection of which it was adopted.
 
 Boyd
 
 v.
 
 United States,
 
 116 U. S., 616, 623 [29 L. Ed., 746, 6 S. Ct., 524];
 
 Weeks
 
 v.
 
 United States,
 
 232 U. S., 383.”
 

 The pronouncements made in propositions four and five of the syllabus, to the effect that the court need not concern itself with the collateral issue of how the evidence is procured and that such evidence was admissible under an unlawful search, are denounced by the
 
 *187
 
 federal and many state courts. Were the law to he applied to cases where search warrants are obtained before search, then I could agree that a court need “not concern itself with the collateral issue of how the evidence was procured.” This is readily understandable; but to apply the principle to cases where no search warrant has been issued is an indirect method of validating unlawful searches and seizures which the Constitution prohibits.
 

 The high federal court severely condemned such a procedure in
 
 Byars
 
 v.
 
 United States,
 
 273 U. S., 28, 71 L. Ed., 520, saying: “A search prosecuted in violation of the Constitution is not made lawful by what it brings to light; and the doctrine has never been recognized by this court, nor can it be tolerated under our constitutional system,” etc.
 

 Some authorities cite the case of
 
 Adams
 
 v.
 
 State of New York,
 
 192 U. S., 585, 48 L. Ed., 575, as supporting the right of the admissibility of evidence unlawfully obtained. Those authorities misconceive the real reason why the United States Supreme Court affirmed the state court. This reason is found in the opinion of the same justice who wrote the
 
 Adams case
 
 and who distinguished it in the later case of
 
 Weeks
 
 v.
 
 United States, supra,
 
 where Mr. Justice Day said: “The decision in that case [Adams case] rests upon incidental seizure made
 
 in the execution of a legal warrant,
 
 and in the application of the doctrine that a collateral issue will not be raised to ascertain the source from which testimony, competent in a criminal case, comes.” (Italics ours.) This statement of the legal principle involved is understandable; that is, where competent evidence has been secured under a legal search warrant, the court will not turn, aside and hear the collateral issue relating to the source from which such competent testimony came.
 

 There are millions of homes in our state occupied by law-abiding citizens. They have a right to the pro
 
 *188
 
 tection guaranteed them by our Constitution and state laws. They should not be deprived of their constitutional protection simply because a few, commonly called public enemies of society, bent on the destruction of life and property, demand the same constitutional immunity as a law-abiding citizen. In my judgment, there is a way out, a judicial common-sense method of meeting the legal problems presented in the instant case. I would not place the innocent householder or one suspected of a minor offense upon the same plane as he who plans major crimes such as commercial kidnapping, the destruction of life or property, or who engages in treason against the state and federal governments. I would concur in an interpretation of our state Constitution denying its protection to such a criminal element of society under the first article of our Bill of Rights, which endows our people with the inalienable right of protecting their property and “enjoying and defending life and liberty.” He who is engaged in plotting the destruction of property by means of bombs, which may culminate in the probable destruction of life as well, should not be permitted to claim constitutional immunity, and this court should so declare. Construing both of these constitutional provisions together — the one contained in our Bill of Rights, the other in the Search and Seizure Article — I would apply the following rule of construction to the instant case: “It is a fundamental canon of construction that a constitution should receive a liberal interpretation, especially with respect to those provisions which are designed to safeguard the liberty and security of the citizen.” 6 Ruling Case Law, 49.
 

 This defendant was suspected of manufacturing bombs and of being engaged in the night-time bombing of the homes of employees of a manufacturing company. If the search produced evidence of his projected crime, the evidence should have been admitted; for neither Constitution nor state law was in
 
 *189
 
 tended to provide security for such dangerous enemies to our public peace. In such case, and especially where the perpetration of the crime was imminent, a law officer, waiting too long, might face the eventuality of a crime accomplished.
 

 It is not for the class of criminal element alluded to, but for the class embodying millions of citizens who are innocent of any offense or whose offenses are minor, that I urge protection under the search and seizure clause of the state Constitution. The decision of this court in the instant case is too broad, since it is made to apply to everyone suspected of committing any offense whatever. There is one advantage the occupant of a
 
 bona fide
 
 dwelling now has and always has had — he could discover whether a search warrant had m fact been issued and, for his own protection, could demand its production. Under this decision, should someone appear in day-time or night-time and demand the search of a housewife’s dwelling, whether the demandant be an officer or a criminal impersonating an officer, as is frequently done, the housewife would be helpless. She would be met with a truthful statement that the Supreme Court of Ohio had held that no search warrant was necessary, and that her only remedy was a suit for trespass. A civil suit might furnish the housewife some relief against an officer if he be under bond; but if the search and seizure be made by a thief or robber impersonating an officer, the amount of damages recovered would probably be
 
 nil.
 
 If her goods were recovered and she were religious, she could thank God for their recovery. This might furnish some consolation for her distress. I fear that this decision will yield a fertile field of operations to the criminal element, should it learn that a dwelling may be searched without a warrant.