THE STATE OF OHIO, APPELLEE, *v.* BARTLETT, APPELLANT.

(No. 7267—Decided January 14, 1964.)

*Mr. John C. Young*, city attorney, *Mr. Gordon Sroufe* and *Mr. Howard P. Lowe*, city prosecutor, for appellee.
*Messrs. Earhart & Robertson*, for appellant.

TROOP, J. This appeal is before this court a second time. In an opinion issued July 30, 1963, four of the seven assignments of error advanced by the appellant were overruled. Disposition of the remaining three was reserved for possible completion of the record by attaching copies of the affidavit and warrant to the bill of exceptions. The overruling of an objection to the introduction of evidence obtained by the use of a warrant based upon an illegal affidavit is the basis of appellant's fifth assignment of error.

It is to appellant's fifth assignment of error that attention is directed in this opinion. The fifth assignment urges that the trial court erred in overruling a motion, timely made, to suppress the evidence secured on a search warrant issued upon an affidavit which did not set out the facts upon which the affiant

based his belief that illegal things were concealed in the place named in the affidavit.

Section 2933.23, Revised Code, prescribes the requirements for the issuance of a search warrant. Several specifications are set out and then concluding the statute requires that the affidavit recite that the "complainant believes and has good cause to believe" and also "that he shall state the facts upon which such belief is based." The Supreme Court recently considered the matter of the facts to be stated in an affidavit for a search warrant in the case of *City of Akron* v. *Williams* (1963), 175 Ohio St., 186, and the rule announced is now controlling. It must be followed by this court in the instant case and respected by police officers and other law enforcement officials when obtaining search warrants for use in the course of their business. The law presently applicable, as announced in the syllabus, is as follows:

"1. An affidavit, on which a search warrant is issued, which does not state the facts upon which the affiant bases his belief that the property for which the search is to be made is located at the premises designated in the affidavit, is defective, and the search warrant issued pursuant to such a defective affidavit is invalid and void.

"2. Evidence seized under an invalid search warrant is not admissible, and a conviction in a criminal case which is based solely on such evidence is void."

The language held to be insufficient in the *Akron case, supra,* is as follows:

"* * * says that he has personal knowledge, or knowledge from a reliable source that * * *."

In the case before us the general form of the affidavit complies with the statute. The concluding statement, controversial here, to which the affiant subscribes, is as follows:

"The facts upon which such belief is based are as follows: information and investigation."

It is impossible to distinguish one of these statements from the other. One says the affiant "has personal knowledge" and the other implies he made an "investigation," although it may well have been made by another. Again one affiant has "information" generally and the other suggests "knowledge from a reliable source." To attempt to distinguish the phraseology

contained in the affidavits would be to create a distinction without a real difference.

The court in the *Akron case, supra,* followed an earlier decision in the case of *Nicholas* v. *City of Cleveland* (1932), 125 Ohio St., 474, in which case the affidavit did not contain any statement of facts of any kind upon which the affiant claimed to rely. This is, of course, a more flagrant violation of the statute than in the *Akron case, supra,* or the instant case, in which we find attempts to, at least perfunctorily, state some facts, but whenever there is even the possibility of the invasion of constitutional guarantees, law enforcement must never become perfunctory.

Judge Griffith relies upon, and quotes from, *Jones* v. *United States* (1960), 362 U. S., 257, in his decision in the *Akron case, supra.* An examination of the *Jones case, supra,* provides a sample of the kind of factual support, for the beliefs recited by an affiant, that meets the approval of the United States Supreme Court. A narcotics agent filed an affidavit for a search warrant. Briefly summarized, the facts upon which he predicated his belief that narcotics would be found at a certain place, are these:

1. He had received information from an unnamed informer that the suspect had a supply of heroin and that the informant had purchased some from that source the last time on August 20, 1957.

2. Information previously received from the unnamed informer had been good.

3. The same information had been received from other sources.

4. The suspect and his associate were known to be addicts.

5. Affiant believed that narcotics were secreted by the suspect and his associate in the apartment sought to be searched.

Justice Frankfurter, in his majority opinion, admits that some of the facts stated in the affidavit are pure hearsay but asserts that hearsay may properly be a basis for a warrant. His rationalization is that an officer may act upon probable cause without a warrant. Probable cause in such cases is many times predicated upon hearsay and it would be unreasonable to require a higher standard of evidence to support a warrant than to support an arrest.

Justice Douglas dissented taking issue with the willingness of the majority to accept hearsay evidence as the basis for a warrant. His comments are rather sharp. Two of them, suggesting a much more rigid rule than that announced by the majority, are as follows:

"This is an age where faceless informers have been reintroduced into our society in alarming ways."

"It is not sufficient that the police think there is cause for an invasion of the privacy of the home."

Both the Ohio Constitution and the federal Constitution say clearly that "no warrant shall issue, but upon probable cause." However convincing the record may be as to the guilt of an accused, the rule in the *Akron case, supra,* the law in Ohio, demands a recital of facts in the affidavit filed to secure a search warrant, sufficient to persuade the judge or magistrate, to whom the request for a search warrant is addressed, that the affiant has sufficient facts at his disposal to establish probable cause. Facts must be asserted, not conclusions or vague generalizations. It should be noted that such facts may be in the nature of hearsay, but they need to be characterized by a degree of substance sufficient to be persuasive. The magistrate must be persuaded since he stands between the citizen clothed with a constitutional right and a law enforcement officer who proposes to invade that right.

To the law enforcement officer charged with preserving the peace and dignity of the state of Ohio, the rule may appear too severe. It is to be remembered that hearsay facts are acceptable. Under the federal decisions the name of an informant need not be revealed. The Supreme Court of Ohio indicates approval of that position. In the case of *State* v. *Berk* (1963), 175 Ohio St., 73, the trial court was upheld in refusing to require the name of an informant to be revealed "where such disclosure would not be helpful and beneficial to the accused in making a defense to a criminal charge lodged against him."

Little or no attention has been directed to the other possibility afforded by the Ohio statute. Section 2933.23, Revised Code, requires facts to be stated in the affidavit but it also provides as follows:

"The judge or magistrate may demand other and further evidence before issuing such warrant."

If the informant of the police officer needs the protection of anonymity or limited facts are incorporated in the affidavit, the informant may be identified and the facts may be expanded by oral testimony to a point of sufficient weight to be persuasive. The use of oral testimony, shown by an appropriate record, may also produce the incidental result of shifting the burden of moving forward in the case from defense to prosecution and from prosecution to defense. As in the instant case, the defense made a prima facie showing that the search warrant was illegal because based upon a faulty affidavit. Had oral testimony been used before the magistrate, by showing it the prosecution moves the burden back to the defense.

Appellant's fifth assignment of error is well taken. Sustaining it disposes of the remaining two assignments.

The *Akron case, supra,* must be followed. The case is remanded to the trial court with the direction to exclude the evidence obtained by the illegally issued warrant, as required by the decision in *Mapp* v. *Ohio* (1961), 367 U. S., 643, and for further proceeding according to law.

*Judgment reversed.*

DUFFEY, J., concurs.

BRYANT, J., dissenting. I must respectfully dissent.

This proceeding began with the filing of an affidavit in the Columbus Municipal Court charging that Robert Jackson Bartlett, defendant-appellant, on November 15, 1962, did "unlawfully keep a room or building or portion thereof, with apparatus, books, or other devices for recording wagers upon the results of a trial or contest of skill, speed, or power of endurance of man or beast contrary to statute," etc., and it was alleged that the "unlawful keeping of a room" for recording wagers was contrary to Section 2915.09 of the Revised Code. The state of Ohio, appellee herein, was plaintiff below.

The back of the affidavit gives the address as being 734 Edgar Place, and elsewhere therein it is alleged the offense took place in Columbus, Franklin County, Ohio.

The matter came on for trial before a judge of the Columbus Municipal Court without the intervention of a jury. It ap-

pears that on November 15, 1962, a search warrant (defendant's exhibit A) was applied for and issued by another judge of the Columbus Municipal Court, which, on its face (omitting the return thereon) (defendant's exhibit B), reads in part as follows:

"Before me, the undersigned, a judge of Columbus Municipal Court of Franklin County, Ohio, personally appeared W. Hilton who being duly sworn according to law, deposes and says that he has good cause to believe and does believe that Horse-bet slips and related material are being kept in a certain building or room known as 734 Edgar Place in said city of Columbus, Ohio, for the purpose of a lottery.

"The facts upon which such belief is based are as follows: information and investigation."

At the beginning of the trial, counsel for Bartlett made a motion reading as follows:

"Mr. Earhart: It continues. And at this time I would like to make a motion for the record that the search warrant and return thereon heretofore issued in this case be quashed and the evidence obtained as a result thereof be suppressed for the reasons that the affidavit is insufficient in law to warrant a search."

This motion was overruled by the trial court.

In support of the offense charged in the affidavit, the state presented the testimony of two witnesses including Carl E. Bailey, a member of the vice squad in charge of morals and gambling, and Richard L. Neff, a Columbus police officer, assigned to the morals and gambling squad of the Police Department Vice Bureau.

The two police officers and one other visited the Bartlett place and after gaining admission found a pad of paper (state's exhibit 1) on which were written in short form certain names identified as the names of race horses, the track where the race was run, the number of the race, the amount bet, whether to win, place or show and certain other information.

The visit to the Bartlett place was made in broad daylight, Officer Neff testifying that he arrived at the place at 2:45 p. m. on November 15, 1962. His two companions were admitted by Mrs. Bartlett at the front door and thereafter he was admitted

at the rear door, Officer Neff testified. As heretofore stated, the charge against Bartlett was based upon the provisions of Section 2915.09, *supra*, which so far as here relevant reads as follows:

"No person shall keep a room or building, or portion thereof, or occupy public or private grounds with apparatus, books, or other devices for recording wagers or selling pools, or record wagers or sell pools upon the result of a trial or contest of skill, speed, or power of endurance of man or beast, * * * ."

Officer Neff testified in part as follows:

"Q. Tell us what happened when you got there. A. We arrived about 2:45 p. m. on the 15th of this month. Sgt. Bailey and Hilton went to the front door and I went to the rear door of this address. Mrs. Bartlett let Sgt. Bailey and Hilton in the front door and later came to the back door and let me in the house. I immediately started searching the kitchen of the residence and I found on the refrigerator—I found a note book with some wagers recorded on it.

"Mr. Earhart: I object to that. It is a conclusion of the witness.

"The Court: That is a conclusion. He can describe the book.

"A. (Continuing) I found a note book with the names of some horses written on it, abbreviations for race tracks, with some numerals and some X's following the names of the horses and the abbreviations of the race tracks.

"I talked to Mr. Bartlett about this sheet of paper. He stated that they were bets that he had taken from his friends and people who called his house to turn into a bookmaker."

Officer Neff testified further in part as follows:

"Q. Did you have any conversation with Mr. Bartlett regarding how many wagers is represented on this?

"Mr. Earhart: Now I object to that.

"The Court: Overruled.

"A. No sir; I didn't. I didn't ask him how many wagers this particular slip represented. The sergeant interrogated him and Officer Hilton asked him questions and I also asked him question. I can't say as to whether they asked him that

or not. However, we did discuss his volume of business. He stated that he just took a few over the telephone from people he worked with.''

Officer Neff testified further:

''Q. Go ahead. A. We noticed by the bets that were recorded on this paper that the results for one of these races was in that day's paper which was there on the table at the time. And Mr.—Mr. Bartlett, or somebody, had figured out on this sheet of paper also how much that horse—how much should be paid to the player of that horse. Those figures were also on this piece of paper.''

Sgt. Bailey testified in part as follows:

''Q. Did you on the 15th day of November have occasion to see the defendant? A. Yes, I did.

''Q. Where was this? A. At 734 Edgar Place, the home of Mr. Bartlett.

''Q. Who did you go there with? A. Officer Neff and Hilton.

''Q. Did you have a search warrant? A. Yes, we did.

''Q. Tell us what happened when you arrived there. A. We arrived; Officer Hilton and I went to the front door, knocked. Mrs. Bartlett came to the door, we identified ourselves, told her why we were there, showed her the search warrant. Mr. Bartlett—She let us in. Just as she let us in Mr. Bartlett came around the corner, I don't know from where. I explained to him also why we were there, showed him the search warrant. And I immediately started searching the living room. At that time I heard Officer Neff state that he had found the slips and we continued searching the living room, didn't find anything there, went in the kitchen, talked to Mr. Bartlett, asked him about this. He stated to me that he worked at Westinghouse, 3:00 to 11:00 and that he had a lot of friends out there and that he took a few bets over the phone from them and they played them off to another man but he wouldn't divulge who the other man was. Also divulged if some of the men out at Westinghouse owed him a little money on those bets.''

Sgt. Neff further testified as follows:

''Q. Go ahead. A. And also stated that he got a little mad and wanted to know why we bother a little fellow like him, why

didn't we pick on some of the bigger ones in town. I think that was about the extent of our conversation.

"Q. I will hand you what has been marked as state's exhibit 1. Can you identify that for me? A. Yes, this is the pad that Officer Neff found at 734 Edgar Place.

"Q. Are you familiar with these type of bet slips? A. Yes, sir.

"And could you interpret the information that is recorded on that slip? A. Yes, sir.

"Q. Would you tell the court what it means? A. Yes. It gives the name of the track, the name of the horse, and the amount played on the horse.

"Q. Does it show how many horses have been bet on it? A. Yes, there's three different ones there.

"Q. The figure two with the X's behind it, what does that indicate? A. There is a two in front of it. Means two dollars to win. The X's meaning nothing on place or show. These bets here are all two dollars to win, nothing to place, nothing to show."

The court admitted state's exhibit 1 into evidence over the objection of counsel for Bartlett. No witnesses were called on behalf of the defendant and the defendant himself did not take the stand to deny the charge.

This case has previously been considered by this court, an opinion having been rendered on July 30, 1963, in which a majority of the court ordered the bill of exceptions returned to the court below to permit the attachment of the search warrant and return (defendant's exhibits A and B), which were not attached to the bill of exceptions. The missing exhibit has since been attached and the case is now before this court on appeal on questions of law.

The seven errors assigned are as follows:

"1. The finding and judgment of the court is contrary to law.

"2. The finding and judgment of the court is not sustained by sufficient evidence nor warranted by the evidence received in the case.

"3. The court erred to the prejudice of the defendant in admitting evidence over the objection of the defendant.

"4. The evidence in the case is insufficient to sustain the conviction of the defendant of the charge set forth in the affidavit.

"5. The court erred in overruling the defendant's motion timely made to suppress evidence obtained on a search warrant issued on insufficient grounds and not supported by the reasons for seeking the same on any credible basis.

"6. The court erred in overruling defendant's motion for a new trial, and

"7. Other errors apparent from the record."

As we understand it, the principal questions involved here relate to the sufficiency of the search warrant (defendant's exhibits A and B); the admissibility of the pad containing the bets (state's exhibit 1); the sufficiency of the evidence to sustain the verdict, and other errors on the face of the record.

The search warrant in this case (defendant's exhibit B) appears to follow closely the form prescribed by the General Assembly of Ohio in Section 2933.25, Revised Code, with the necessary insertion of facts applicable in this case. I do not believe there can be any valid or substantial objection to either the form or sufficiency of the search warrant herein.

The affidavit of police officer W. Hilton (defendant's exhibit A) appears on the opposite side of the paper on which appears the search warrant. (Defendant's Exhibit B.) Such affidavit is required as a basis for the issuance of a search warrant by the federal and Ohio Constitutions and by Section 2933.23, Revised Code.

The Fourth Amendment to the Constitution of the United States provides as follows:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Section 14 of Article I, Bill of Rights of the Constitution of Ohio makes similar provision in almost identical language and reads as follows:

"The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched and the person and things to be seized."

Section 2933.23, *supra*, reads as follows:

"A warrant for search shall not be issued until there is filed with the judge or magistrate an affidavit particularly describing the house or place to be searched, the person to be seized, the things to be searched for and seized, and alleging substantially the offense in relation thereto, and that the complainant believes and has good cause to believe that such things are there concealed, and he shall state the facts upon which such belief is based. The judge or magistrate may demand other and further evidence before issuing such warrant. * * *"

The Fourteenth Amendment to the Constitution of the United States guaranteeing to the citizens of each state due process of law and equal protection of the law has been held to make the Fourth Amendment to the federal Constitution operate as a restriction upon the states as well as the federal government and has invalidated unreasonable searches and the use as evidence all things seized in such searches. See *Mapp* v. *Ohio* (1961), 367 U. S., 643, rehearing denied, 368 U. S., 871. The *Mapp case, supra*, overruled the holding of the Supreme Court of the United States in *Wolf* v. *Colorado* (1949), 338 U. S., 25, that the provisions of the federal Constitution, above set forth, were not applicable to bar the use of illegally obtained evidence in criminal prosecutions in state courts. In the *Mapp case, supra*, the fourth and sixth branches of the headnotes as reported in 6 L. Ed. (2d), 1081, read as follows:

"The Fourth Amendment's right of privacy is enforceable against the states through the due process clause of the Fourteenth Amendment."

"The rule which excludes unconstitutional evidence from being admitted in a state criminal trial is an essential part of both the Fourth and Fourteenth Amendments."

It was assumed by both the Supreme Court of the United States and the Supreme Court of Ohio in the *Mapp case, supra*,

that the police officers at no time actually had any search warrant. In the case now before us there clearly is a search warrant issued by the judge of a court of record.

The requirements of both the federal and state Constitution may be enumerated as follows: (1) There shall be no unreasonable searches and seizures; (2) no search warrants shall issue but upon probable cause supported by oath or affirmation; (3) the place to be searched and the person or things to be searched shall be "particularly described."

It would appear that the affidavit in this case (defendant's exhibit A) satisfies the above constitutional requirements. Section 2933.23, *supra*, would appear not only to implement fully the above constitutional requirements but, in addition, requires the following: (1) Alleging substantially the offense or crime in relation thereto; (2) that complainant has good cause to believe such things are there concealed; (3) the facts upon which such belief is based; (4) if demanded by the court issuing the search warrant, other and further evidence.

No question has been raised as to the first and second requirements as listed above, but the chief issue in this case has to do with the third issue, namely, whether or not the supporting affidavit (defendant's exhibit A) states facts upon which the belief of the complainant is based. Obviously, if the affidavit upon which the search warrant is issued, does not state the facts upon which the affiant bases his belief as required in Section 2933.23, *supra*, the search warrant is not valid. See *City of Akron* v. *Williams* (1963), 175 Ohio St., 186, in which the two branches of the syllabus read as follows:

"1. An affidavit, on which a search warrant is issued, which does not state the facts upon which the affiant bases his belief that the property for which the search is to be made is located at the premises designated in the affidavit, is defective and the search warrant issued pursuant to such a defective affidavit is invalid and void.

"2. Evidence seized under an invalid search warrant is not admissible, and a conviction in a criminal case which is based solely on such evidence is void."

The Supreme Court of Ohio in the *Williams case, supra,* followed the case of *Nicholas* v. *City of Cleveland,* 125 Ohio

St., 474, in which the fourth branch of the syllabus reads as follows:

"4. Where an affidavit for search alleges only that complainant believes and has good cause to believe that the things to be searched for are concealed in a house or place, but does not state the facts upon which such belief is based, such affidavit and warrant issued thereunder are illegal and void under the provisions of Section 13430-3, General Code [Section 2933.23, Revised Code]."

Griffith, J., in the *Williams case, supra,* clearly stated that the affidavit in that case had the same defects as in the *Nicholas case, supra.* However, in the case before us the affidavit of the police officer expressly and clearly states that he was given information as to the keeping of horsebet slips and related material and that he made an investigation of this information and based his belief upon that.

The return shows that both were correct. We do not believe that there has been any showing that the affidavit is insufficient and it follows, therefore, that the several errors assigned are not well taken and must be overruled, the judgment of the court below affirmed at costs of the appellant, and the cause remanded to the court below.