Scileppi, J. (dissenting).
I dissent and vote to affirm.
As a general rule, in order that an injury arise out of and in the course of employment within the meaning of the Workmen’s Compensation Law, it must have occurred on the employer’s premises, and injuries received while going to and from work are not compensable. The reason for this rule stems from the basic purpose of the Workmen’s Compensation Law to shoulder on industry the expense incident to the hazards of industry. As one court has aptly put it, the reason for the Workmen’s Compensation Law ‘ ‘ is that in a modern industrial state the risk of injury to workmen while engaged in the employer’s service is a social risk, chargeable against the business itself ” (Lindebauer v. Weiner, 94 Misc. 612, 615; emphasis added). Since industry must carry the burden, there must then be some *140 causal connection between the employment and the injury or it must have had its origin in some risk incident to or connected with the employment, or have followed from it as a natural consequence.
As the majority has noted “ outside employees ”, such as salesmen, collectors and solicitors — workers having no fixed place in which their work is done — constitute a class of workers who come within the exception to the general rule that accidents occurring off the employer’s premises are not compensable. The reason for this exception is that the “ outside employee ” by the very nature of his job is “in the course of employment ’ ’ when outside the fixed premises of the employer and by the very nature of the job is subjected to hazards — such as vehicular accidents — which are unconnected with the fixed employment premises.
In the instant case the decedent had attended a recording session which ended at about 2:30 a.m. At approximately 4:30 a.m. the decedent’s car struck a pole while en route to his home, and he suffered fatal injuries. In an effort to obtain an award, the claimant attempted to prove that her husband’s duties as president of Gerald Records, Inc. were such that he was both an “ inside ” and an “ outside ” worker. No evidence, however, was adduced to sustain her position. Indeed in its memorandum decision of March 15, 1966 the board stated that it found the record as to decedent’s work activities inconclusive, and it, therefore, restored the case to the Referee Calendar for additional testimony. Notwithstanding that the claimant furnished no additional evidence the board, for some mystifying reason, reversed itself and made an award in claimant’s favor, finding—upon the very same inconclusive record — that decedent was an inside and outside worker; ‘ ‘ that he was in the course of his employment while traveling home at the time of the accident * * * that said accident arose out of, and in the course of his employment, and that death is causally related thereto ”. The Appellate Division dismissed the claim holding that “ The determination made is not supported by any evidence, much less substantial evidence ”.
On appeal to this court the claimant argues that the record supports the board’s finding that decedent was an outside worker.
*141 The majority concedes that this argument is without merit, but rests its decision on the theory that an accident occurring between work and home is compensable if 1 ‘ the work duties associated with employee’s home are such that it can genuinely "vnd not fictitiously be said that the home has become part of the employment premises” (1 Larson, Workmen’s Compensation Law [1966], § 18.31, p. 294.33).
In my opinion this rule is inapplicable to the facts of this case. There is no evidence in this record upon which to base a finding that decedent’s work activities were such that his home genuinely became part of the employment premises.
The majority states that the decedent regularly took tapes home to work on them there. The evidence with respect to this, however, was at best inconclusive. The sales manager, who had only been with the company for three months, did testify that it was the practice of some companies to have a man take a tape home after a recording session to check it for mistakes and that it was part of decedent’s job to do this. The witness, however, did not say that this was done regularly by decedent or that it in fact was even necessary. Neither did he testify as to how often this was done. Surely if recording sessions were held only once a month and thus decedent worked at home only once a month, it could not be said that his home genuinely became part of the employment premises.
The company’s vice-president testified that decedent would 1 ‘ many times ’ ’ take tapes home with him after recording sessions were over and that he (the witness) used to listen to recordings “ all the time ” at decedent’s home. This testimony is not sufficient in my opinion to support a finding that decedent’s home was transformed into a work situs. Moreover, while it may be true that in the past the witness had worked on tapes “many times ” at the decedent’s home, he testified that he had not attended a recording session for “ about six or eight months before ’ ’.
The majority also states, in an effort to bring this case within the rule, that “it was necessary, and beneficial to [decedent’s] employer for him to perform duties at home in view of the lateness and irregularity of his working hours as well as of the custom in the trade ”. Simply put, there is not one iota of evidence in the record to support this statement. Nowhere *142 in the record is it shown that, it was necessary or required for decedent to work at home. Indeed even the majority states that decedent ‘ ‘ did, and was privileged to, perform his tasks either in his office, in an independent outside studio or at his home ” (emphasis added). Neither is there any evidence to show that it was beneficial for the corporation to have decedent work at home on the tapes.
The only evidence in this respect was the testimony of the sales manager that some companies would check and edit the tape the morning after a recording session and others would have a man take the tape home and work on it that night. I would add that as a matter of common sense it would seem that, if a recording session ended in the early morning hours, the tape would be checked and edited — barring some emergency rush—the following morning, when it could be assumed that after a night’s sleep the person charged with the responsibility of editing would be fresh and mentally alert.
Thus, from all that appears in this record it was only a matter of personal convenience that decedent occasionally edited tapes in his home and, therefore, contrary to majority’s position, the board could not permissibly find that decedent’s home had genuinely became a work situs.
My difference with the majority, however, is more fundamental than whether the record supports a finding that decedent’s home had become a work situs, for in my view, even if we assume it had, a reversal here would nevertheless be unwarranted, unfair, and contrary to the basic purpose of the Workmen’s Compensation Law.
Under the far too broad rule enunciated by the majority any accident occurring between work and home would be compensable even though it could not in fact be said that the trip had been in part motivated by business reasons.
Thus, under the majority’s rule, an accident occurring to an employee homeward bound solely to attend his daughter’s birthday party would be compensable. This simply' is not the law. Judge Cardojzo, in enunciating the test to be applied under the dual purpose trip doctrine, specifically said: “ If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure *143 of the private purpose though the business errand was undone, the travel is then personal, and personal the risk ” (Matter of Marks v. Gray, 251 N. Y. 90, 94).
It seems clear from the quoted language that for the dual purpose doctrine to be applicable there still must be some proof —■ other than the mere fact that the home has become a business situs — that the trip home was in part business motivated.
In discussing the dual purpose trip doctrine, Professor Larson recognizes two basic categories of cases: “In some cases, the establishment of the home as a business situs can best be undertaken by demonstrating a clear business use of the home at the end of the specific journey during which the accident occurred. In others, there may be no evidence that on that particular night the claimant was going to perform some particular work; in these cases the evidence must take the form of proof that the regularity of work at home and other factors endow the home with the continuing status of a work place, so that any going and coming journey is covered.” (1 Larson, op. cit., § 18.31, p. 294.35.)
It seems to me, however, that there is a third category — one in which the home is established as a business situs, but it is also shown or the only logical inference to be drawn from the evidence is that the trip home was in fact personal and not for business reasons at all.
It appears to me that the instant case falls within the third category. The evidence relied upon to establish decedent’s home as a business situs was to the effect that he sometimes took tapes home with him after recording sessions. At no other time was his home used as a business situs. On the night that he was killed, he was going home after a recording session, but there is no probative evidence that he had tapes with him. The only logical inference to be drawn from the record is that this particular trip had no business purpose at all and that decedent was simply going home to sleep after a long day’s work. Under the circumstances it cannot be said that decedent was killed in an accident arising out of and and in the course of his employment. Surely not every accident occurring between work and home is compensable merely because the home is a business situs. It may well be that there is a conclusive presumption in claimant’s favor where the home is *144 established as a business situs and there is no evidence one way or the other as to the motivation for the trip. But in a case such as this, where the evidence indicates that the trip was personal, recovery should not be allowed.
The majority cites several cases in a footnote which presumably support their theory. A review of these cases indicates that the contrary is true.
Thus, in Matter of Tiernan v. Potter (281 App. Div. 787), a physician’s nurse who was injured while on the way home was granted an award. However, the evidence indicated that she was required to perform secretarial duties at home and on the occasion of her accident she was carrying stenographic notes for transcription.
In American Mercury Ins. Co. v. Britton (314 F. 2d 285) compensation was granted where a local claims adjuster was killed while walking from his employer’s office to his room carrying files on which he intended to work when he arrived at his room. Moreover, it was shown that the employer knew that decedent worked at home and required him to do so.
Compensation was awarded in Inglish v. Industrial Comm. (125 Ohio St. 484) to a school teacher who was killed by an automobile while he was on his way home carrying examination papers to be corrected because there was no place at the school where he could do this work. Thus in Inglish it was in fact necessary for the teacher to work at home and in fact he was going home for that purpose.
Lang v. Board of Educ. (70 S. D. 343) is not at all in point because compensation was awarded on the theory that claimant was an outside worker whose duties subjected him to the risks of travel between his various places of employment.
The other two cases relied upon by the majority—Matter of Sienkiewicz v. Buffalo Lite Vent Corp. (25 A D 2d 795, mot. for lv. to app. den. 18 N Y 2d 577) and Matter of O’Connor v. Johnson & Johnson (12 A D 2d 846)—are not in point either for each of these cases was decided on the “ outside worker ” theory.
The only New York case which I have been able to find dealing directly with the dual purpose trip doctrine is contrary to the position taken by the majority. Thus in Matter of Winters v. Valley Farm Food Sales (16 A D 2d 1010) compensation was *145 denied to the claimant whose husband was killed in an automobile accident while en route home notwithstanding that the evidence showed that he frequently worked at home with his employer’s knowledge, although not at its direction, and in fact had corporate papers with him when he was killed. The court held that there was no direct proof that the trip home had. a dual purpose.
Since the majority has relied heavily upon Professor Larson’s treatise, it is not amiss to note that in every case cited therein in which recovery was allowed there was direct proof that the claimant was in fact going home to do work, or at least, unlike the present ease, there was no proof to the contrary.
In sum, I am of the opinion that the majority has sustained an award which is unsupported by evidence and upon a theory which is not only unsound but which runs contrary to settled law and places upon the industrial community of this State an intolerable burden, not contemplated by the Workmen’s Compensation Law.
Judges Burke, Bergan and Keating concur with Chief Judge Fuld; Judge Scileppi dissents and votes to affirm in a separate opinion in which Judges Breitel and Jasen concur
Order reversed, etc.